# EXHIBIT 2



Home / Insights / Challenging Tax Cuts and Jobs Act Regulations and IRS Guidance

# Challenging Tax Cuts and Jobs Act Regulations and IRS Guidance

January 21, 2020

Skadden's 2020 Insights
Christopher P. Murphy Royce L. Tidwell Nathan P. Wacker
The Tax Cuts and Jobs Act (TCJA) brought sweeping changes to the U.S. international tax system. Along with those changes came substantial taxpayer uncertainty as to how the TCJA's rules apply to their unique circumstances. That uncertainty continues to affect current tax return filings and may significantly impact a company's financial reporting, potentially requiring taxpayers to establish reserves and make public disclosures regarding issues created by the TCJA.

The U.S. Department of the Treasury (Treasury) and the Internal Revenue Service (IRS) have raced to issue a series of regulations, notices and other administrative guidance regarding the TCJA's implementation; however, the guidance often has left taxpayers with more questions than answers. Among other issues, key components of post-TCJA guidance may be invalid and subject to challenge by taxpayers.

This uncertainty could be readily resolved in non-tax administrative areas, in which regulated companies can seek immediate judicial review of newly issued regulations (and, in some cases, obtain temporary injunctive relief), potentially limiting their financial exposure and invalidating regulations. The Anti-Injunction Act, however, significantly limits taxpayers' ability to seek immediate judicial review of a tax regulation or other IRS guidance. Thus, they could be forced to carry financial exposure, and potentially financial accounting reserves, for 10 years or more before their case is finally resolved.

Given the significant and far-reaching consequences of continuing ambiguity, companies affected by uncertain post-TCJA rulemaking should explore creative procedural options for

accelerating their cases, which could allow them to obtain clarity and resolve their issues far more quickly.

## Problematic IRS and Treasury Rulemaking

In the months after the TCJA was enacted, Treasury identified more than 60 priority issues for which additional guidance was needed. Treasury and the IRS have released much of that planned guidance, creating further uncertainty at times.

Some of the guidance issued by the IRS and Treasury appears to be inconsistent with or goes beyond the scope of controlling statutes. As one example, Treasury issued regulations under Section 78 that it claimed were designed to prevent an unintended benefit.

The language of the TCJA, as originally passed, permits some U.S. shareholders of foreign corporations to claim both a foreign tax credit and a deduction for foreign taxes paid by the foreign corporation. Section 960 allows U.S. shareholders of foreign corporations to claim a foreign tax credit for foreign taxes paid by the foreign corporation. The TCJA added Section 245A, which permits U.S. shareholders to deduct dividends received from a foreign corporation. Under Section 78, amounts deemed received under Section 78 that represent taxes paid by the foreign corporation generally are treated as dividends. Thus, some U.S. shareholders of foreign corporations could be eligible for both a foreign tax credit under Section 960 and a deduction for those same taxes under Section 245A.

As part of the TCJA, Congress amended Section 78 to provide that amounts representing foreign taxes are not eligible for the Section 245A deduction. However, Congress established different effective dates for Section 245A and for the changes to Section 78. Thus, U.S. shareholders of non-calendar-year foreign corporations still may be able to claim both credits and deductions for the same foreign taxes. Treasury sought to prevent that result through regulations purporting to change the statutory effective date for the new Section 78. Case law strongly suggests, however, that Treasury cannot unilaterally change a statutory effective date. Taxpayers thus face uncertainty, because Treasury's attempt to alter the effective date of the new Section 78 may be invalid.

Over the next few years, taxpayers likely will challenge this and other examples of TCJA-related guidance that seemingly overstep or create further uncertainty.

# Procedures for Challenging IRS and Treasury Guidance

Taxpayers seeking to challenge IRS and Treasury guidance face unique procedural hurdles. For challenges to non-tax administrative guidance issued by other agencies, the Administrative Procedure Act generally permits a party to file a lawsuit that simply asks the court to rule on the validity of the guidance being challenged. When the guidance relates to the collection of a tax, however, the Anti-Injunction Act may prevent review until the IRS enforces the guidance and applies it to the taxpayer. Thus, challenges to tax guidance generally are brought after the IRS completes its audit of a tax year and assesses an additional tax liability based on the guidance, and courts have frequently rejected recent taxpayer attempts to challenge tax regulations and other guidance prior to enforcement of those rules by the IRS.

Waiting for the IRS to complete its audit, however, means years of continuing uncertainty that affects current tax positions, future tax planning and public financial reporting. An audit of a taxpayer's 2018 tax year may not conclude until 2024. If the IRS makes an adjustment based on a position taken with respect to the TCJA and the taxpayer seeks judicial review, that process could take another three years, reaching final resolution in 2027. Thus, taxpayers may consider options to accelerate their dispute with the IRS rather than waiting for the IRS to complete its audit. In particular, taxpayers may pay the tax that would be owed under the guidance, then immediately file a claim for refund seeking to recover that tax. In so doing, taxpayers may challenge IRS and Treasury guidance much more quickly, accelerating judicial review by a number of years and potentially limiting any financial statement impact.

Taxpayers already have taken an accelerated approach to challenging aspects of the TCJA. In September 2019, in *Moore v. United States*, a couple filed a lawsuit in the U.S. District Court for the Western District of Washington seeking a refund of the TCJA transition tax on offshore earnings and asserting that such tax is unconstitutional. Although the taxpayers were individuals and did not have the financial statement concerns discussed above, they sought an expedited review. Thus, they paid the transition tax owed, then filed an amended return seeking a refund. That allowed them to file a refund suit for their 2017 tax year in September 2019 — six months after submitting their amended return — rather than waiting several years for the completion of an IRS audit.

Paying the tax and immediately seeking a refund, however, may be costly and raises other challenges: What happens to the IRS audit of those years? Will the IRS seek to stay the litigation pending its examination? How should a taxpayer deal with rollover or rollback items to

the tax year that is now in litigation? All of these questions must be carefully considered before proceeding to court.

*This memorandum is provided by Skadden, Arps, Slate, Meagher & Flom LLP and its affiliates for educational and informational purposes only and is not intended and should not be construed as legal advice. This memorandum is considered advertising under applicable state laws.*

# Related Capabilities

Tax  //  Tax Controversy and Litigation