# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv- cv-02622-RBJ

LIBERTY GLOBAL, INC.,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

---

## UNITED STATES' OPPOSITION TO MOTION TO DISMISS

---

The United States has sued for additional taxes LGI would owe if certain aspects of LGI's "Project Soy" tax transactions are disregarded. LGI has moved to dismiss (Dkt. 24), on the ground that the government did not follow procedures that allow the IRS to collect administratively. But, as this Court has already recognized (Dkt. 21), courts have found that "[w]hen a taxpayer fails to satisfy an obligation, the government may proceed in two ways." *United States v. Sarubin*, 507 F.3d 811, 815 (4th Cir. 2007). The IRS may collect the taxes administratively, or the United States may exercise its common-law right to sue on the debt in an Article III court, outside the administrative sphere. *Id*.

The statutory system for resolving tax disputes recognizes and preserves the government's right to sue for unpaid income taxes, without assessment, outside of the administrative process. The government's filing of the complaint in this case is in accord. It takes

1

into consideration the Court's broad powers under § 7402,[1] the limitations period established by § 6501, and the promotion of efficiencies. In contrast, LGI's view upsets Congress's balancing of these considerations.

## I.     FACTS AND PROCEDURAL HISTORY

In late 2018, LGI executed Project Soy, a four-step series of tax-motivated transactions designed to generate a $2.4 billion dividends received deduction. (Dkt. 4 ¶¶ 3 *et seq.*). In the ordinary course, a taxpayer like LGI would have filed a tax return claiming the benefit of Project Soy, even if it believed the IRS might challenge the transaction if it selected the return for an audit. But tax litigators are starting to recommend strategies to bypass the administrative process, by suggesting taxpayers pay the tax, and then bring a § 7422 refund suit "rather than waiting for the IRS to complete its audit." *See Skadden Insights: Challenging Tax Cuts and Jobs Act Regulations and IRS Guidance* (1/21/2020) (Ex. 1 at ECF pg. 4; *id.* at 2-3 (encouraging "creative procedural options for accelerating [] cases …")).

That is what LGI did here. It filed its original 2018 tax return in October 2019 in accordance with a temporary regulation designed to curtail similar transactions. (Dkt. 4 ¶ 26). Two months later, LGI filed an amended return taking the opposite position, inconsistent with the temporary regulation. (*Id.*). Since it had paid about $90 million more with its original return than shown on its amended return, it claimed a refund for that amount (plus interest). (*Id.*). By statute LGI had to wait at least six months after filing the amended return before it could file its judicial proceeding in an Article III court. §§ 6532(a), 7422(a). During that period, the IRS

---

[1] All "§" references are to the Internal Revenue Code, 26 U.S.C. *et seq.*, unless otherwise noted.

began an audit and issued information and document requests ("IDRs") relating to Project Soy. (*See* Ex. 2 at ECF pg. 2). LGI initially appeared to cooperate but then objected and informed the IRS that it wished "to terminate the administrative process by immediately filing a lawsuit." (*Id*. at. 4; *id*. at 3 (noting "intentions to expeditiously file a lawsuit").) The IRS issued a delinquency notice that requested a response to its outstanding information requests by November 27, 2020. (Ex. 3). On November 27, LGI filed a refund suit, Case No. 20-cv-03501-RBJ, at Dkt. 1.

The United States' answer observed that LGI had filed suit mid-audit, and that the United States may need discovery. (Case No. 20-cv-03501, Dkt. 18 ¶¶ 3, 23). The United States also noted that the IRS might still issue a deficiency notice or bring a judicial action (at that time it contemplated a permissive counterclaim), if LGI had underpaid its 2018 taxes. (*Id*. ¶ 3).

Early in the refund litigation, LGI sought to stay discovery so that the Court could first decide whether the temporary regulation violated the Administrative Procedure Act. The United States repeatedly voiced concerns about the proposal's effect on the schedule. (Case No. 20-cv-03501-RBJ, Dkt. 31 at 10, 35-39). The general statute of limitations in income tax matters is three years from the time a return is filed, which would be October 2022 here, leaving the United States little time to complete discovery (given the audit was "terminated"). (*Id*. at 10-11, 35-37; *see* § 6501(a)). To solve the problem, the United States suggested that LGI agree to extend the limitations period. (*Id*. at 35-39); § 6501(c)(4). At the time, trial was set for the week of October 31, 2022. LGI's counsel stated on the record that LGI would agree to extend the period through the trial date, if the discovery stay became an issue (Case No. 20-cv-03501-RBJ, Dkt. 31 at 40):

> THE COURT: … Mr. Madan has indicated that he sees no statute of limitations issue, so at a bare minimum if it were even necessary he would toll the running of the statute of limitations through the week of October 31st, correct, Mr. Madan?

MR. MADAN:  That's correct, Your Honor.

The Court agreed to hear the regulation issue and stayed most discovery. (*Id*., Dkt. 30.)

The Court thereafter issued an order determining that the temporary regulation did not retroactively apply, and it subsequently re-set the trial to October 16, 2023. (Case No. 20-cv-03501-RBJ, Dkts. 46 and 51). The United States sought to resolve the remaining discovery matters informally. (*See, e.g.*, Dkt. 50 ¶ 11). LGI proposed pausing further discovery once again so the Court could hear a second "threshold" issue. (*Id*. ¶ 13). The Court rejected LGI's stay proposal, but by early September 2022, LGI had not provided further discovery. Given the potential of a three-year deadline (if applicable), the United States reminded LGI of its representations and provided an extension form for signature. But on or about October 4, 2022, LGI informed the United States that it would not agree to an extension, reversing course from its prior statements. LGI also declined to execute a more limited extension, for a shorter time, or as to Project Soy only. Thus, on October 7, 2022, the United States filed this suit.[2]

## II.    ARGUMENT

### A.    The United States has a common-law right to sue on a tax debt outside the administrative process.

Ordinarily, the IRS follows an administrative process, outside of any court proceeding, so that it may collect administratively, such as by levy. *Sarubin*, 507 F.3d at 815. But that process is not exclusive. The United States has a common-law right to sue to collect a tax debt in an Article

---

[2] The scheduling order's deadline for adding a permissive counterclaim had not passed, but it was unclear if leave to amend could be granted before § 6501's general deadline for bringing a judicial action. (*See* Case No. 20-cv-03501, Dkt. 18 ¶ 3, Dkt. 24 at 7 (referencing possible counterclaim)).The government thus filed a separate complaint.

III court. *Id*. (*citing Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 271 (1935)). A seminal authority recognizing that longstanding right is *Dollar Sav. Bank v. United States*, 86 U.S. 227 (1873). In that case, the Supreme Court rejected an argument that the government was required to collect a tax following "a special remedy for its assessment and collection," but instead permitted the government to bring "an action of debt in the Circuit Court." *Id*. at 237-38; *see also Damsky v. Zavatt*, 289 F.2d 46, 50-52 (2d Cir. 1961) (citing *Dollar Savings* and observing the "comprehensive scheme of remedies" meant that "the Government's power to sue in debt for the tax itself seldom arose" but "that power was upheld" when it did arise).

Today's administrative procedures for determining a deficiency were largely developed in the 1920s, when Congress created what is now the Tax Court, then the Board of Tax Appeals ("BTA"). *Hallmark Rsch. Collective v. Comm'r*, 159 T.C. No. 6, at 6 (2022). Litigation soon arose concerning the liability of transferees of corporate assets for a corporation's unpaid taxes. Section 274(a) of the 1926 Revenue Act provided deficiency procedures equivalent to today's §§6212 and 6213. Section § 280(a) of the same Act provided that the liability of a transferee is "assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in tax." *Leighton v. United States*, 289 U.S. 506, 508 at n.* (1933). The United States brought suits against transferees without following the deficiency assessment procedures. Section 1122(b) provided the courts with sweeping authority to enforce the tax laws in language substantially the same as what is today § 7402(a). (Ex. 4 (providing the historical text)). Transferees argued that the government could not sue without following the deficiency procedures. Courts disagreed, reasoning that the deficiency procedures were in tension with § 1122(b) (now § 7402(a)) and other provisions, and were cumulative to, not

exclusive of, the government's power to collect debts via suit. *See*, *e.g.*, *Leighton v. United States*, 289 U.S. 506, 509 (1933), *citing United States v. Greenfield Tap & Die Corp.*, 27 F.2d 933, 934 (D. Mass. 1928)("I am unable to accept … the exclusiveness of [§] 280."); *see also United States v. Russell*, 461 F.2d 605, 607-08 (10th Cir. 1972) (applying *Leighton* and rejecting argument that deficiency procedure "provided the sole remedy.")

Courts continue to acknowledge the right to sue on tax debt in a variety of settings. For example, the Tenth Circuit rejected a taxpayer's claim that an assessment was invalid, but also observed that "moreover, the IRS may bring a judicial tax collection action even if an invalid assessment prevents it from attempting to collect [] in an administrative proceeding." *Howell v. United States*, 164 F.3d 523, 526 n.4 (10th Cir. 1998), *citing Goldston v. United States (In re Goldston)*, 104 F.3d 1198, 1200 (10th Cir. 1997). Where a statute made a third-party liable for a taxpayer's tax, the Third Circuit found that the government could sue without assessment, or any notice beyond the complaint, given the "common-law right to sue for taxes[.]" *United States v. Jersey Shore State Bank*, 781 F.2d 974, 979 n.4 and 980 (3d Cir. 1986); *see also Sarubin*, 507 F.3d 815-16 (since government could sue for unassessed tax, it may sue for unassessed interest on an assessed tax); *Shelter Mut. Ins. v. Gregory*, 555 F. Supp. 2d 922, 933 (M.D. Tenn. 2008).

These authorities do not involve the precise situation here: a suit to collect an unassessed tax where the taxpayer attempted to "terminate" the administrative process, before the IRS determined any deficiency or could make a formal administrative assessment. Given the taxpayer's objections, the Project Soy audit could only have gone forward if the United States began formal proceedings, *e.g.*, summonses, enforceable by judicial action. It is no surprise that this exact situation seldom arose. Aside from offering taxpayers a prepayment dispute forum

(which LGI would also have here), the administrative process is beneficial to tax administration. The assessment functions like a judgment, meaning the IRS can begin proceedings to seize (levy) a taxpayer's property based on an assessment, without appearing before an Article III court. *Keller Tank Servs. II, Inc. v. Comm'r*, 854 F.3d 1178, 1183–84 (10th Cir. 2017); *Principal Life Ins. Co. v. United States*, 95 Fed. Cl. 786, 790–91 (2010). An assessment creates a lien without the IRS having to record it (§§ 6321, 6322), gives the government ten years to collect administratively, versus three for a suit without assessment (§§ 6501(a), 6502), and allows the government to extend that period by suing to reduce the assessment to judgment in an Article III court (§ 6502), where the assessment and even a deficiency determination enjoy a presumption of correctness. *United States v. Melot*, 562 F. App'x 646, 652 (10th Cir. 2014).

The tax code also reflects the United States' authority to sue without first following administrative procedures for collection. Congress permits the Attorney General to bring tax suits, with the Secretary of Treasury's authorization. § 7401. Congress gave the District Courts jurisdiction to hear such suits, and broad power to issue "such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." § 7402(a); *see also* 28 U.S.C. § 1340. Such orders, Congress provided, "are in addition to and not exclusive of any and all other remedies of the United States … to enforce such laws." § 7402(a). Indeed, the Supreme Court in *Dollar Sav. Bank*, which had held that the deficiency procedures were not the exclusive means by which the government could recover a tax debt, described that since 1866 Congress had authorized suits to recover unpaid taxes citing a predecessor statute that provided that "taxes may be sued for and recovered, in the name of the United States, in any proper form of action, before any Circuit or District Court…."  86 U.S. at 241.

The specific right to sue without administrative assessment is reflected in, and limited by, § 6501(a), which states that (emphasis added) "[e]xcept as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed … and no *proceeding in court without assessment for the collection of such tax* shall be begun after the expiration of such period." *Clark v. United States*, 63 F.3d 83, 85 n.1 (1st Cir. 1995) (citing § 6501).[3] The statute provides longer periods to bring a suit "without assessment" in some cases. For example, a six-year period may apply in cases involving a constructive dividend. § 6501(e)(1)(C).[4] Section 6501(a) applies to income tax; it puts no qualifiers on what sort of tax may be sued for "without assessment," and § 6501(c)(2), which specifically excludes income taxes (subtitle A), also provides a different period in some cases.

Moreover, a taxpayer's obligation to pay its appropriate liabilities accrues without the IRS taking any administrative action. With limited exceptions, "when a return [] is required … the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax … at the time and place fixed for filing the return," *i.e.*, before the IRS can begin administrative action. § 6151; *Principal Life*, 95 Fed. Cl. at 790–91. Section 7402 gives courts the power to enforce that obligation.

---

[3] Notably, in *Dollar Sav. Bank* two justices had dissented because of their fear of an unlimited limitations period for common-law suits to recover tax debts. 86 U.S. at 241. Congress has resolved that by subjecting common-law suits to the limitations periods in § 6501.

[4] Since the two suits involve the same putative dividend, the six-year statute may apply here. If so, the IRS could still issue the § 6213(a) notice. Given the Court's suggestion that LGI not file this motion at all (Dkt. 21), the Court could stay this suit until after it resolves the substantive questions in the refund suit. If LGI is correct on the merits there, this second suit may become unnecessary, whatever the timing or procedure for bringing it.

**B.      Section 6213 is not an exclusive procedure and did not otherwise displace the government's longstanding right to sue to recover a tax debt.**

Section 6213(a) provides jurisdiction to the Tax Court for taxpayer prepayment challenges. (The government does not institute suits in that court.) The statute provides, in part:

> Within 90 days … after the notice of deficiency authorized in section 6212 is mailed …, the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided … no assessment of a deficiency in respect of any tax imposed by subtitle A [*i.e.* income taxes] … and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of [90 days], nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. …

A notice of deficiency is "known as the ticket to the Tax Court," the exclusive forum for taxpayers to seek pre-payment review of deficiencies. *Hallmark*, 159 T.C. No. 6 at 8. That is, taxpayers who wish to challenge a debt before collection can do so only in the Tax Court, and the IRS cannot make use of the many powers an assessment affords without providing the taxpayer notice and a prepayment opportunity to petition the Tax Court. *Id.* at 5. Congress described the BTA, the Tax Court's predecessor, as "[t]he largest administrative benefit" in the 1924 Revenue Act, because previously taxpayers had no pre-collection mechanism to challenge a liability. 68 Cong. Rec. 2684 (1924) (Ex. 5 at ECF pg. 5 ). But in a thoroughly researched opinion, the Tax Court in *Hallmark* distinguished what it called the deficiency assessment regime of § 6212-6213 from the government's alternative route: "Not relevant here is the Government's filing a collection suit, under section 7403(a), 'without assessment.' § 6501(a)." *Hallmark*, 159 T.C. No. 6 at 5, n.6.[5]

---

[5] The Conference Report describing the 1926 changes to § 274 (the predecessor to § 6213(a)) describes that the prohibition on any act to assess or collect "does not, of course, bar proceedings

LGI presumes that § 6213(a) is exclusive and abrogates the government's longstanding right to sue for an income tax debt. But where there is a longstanding common-law right, a statute does not displace that right without clear language showing it is doing so. *FBI v. Fazaga*, 142 S. Ct. 1051, 1060-1061 (2022). There is no indication Congress did so here. As discussed *supra* 5-6, court decisions issued after the deficiency process was created found that the government's rights to sue persisted. The statutory text confirms that these cases, which have not been overruled, are still good law.

As a starting point, Congress has over the years changed the time period in which the government may sue without administrative assessment, but, consistent with § 7402, it has never abrogated that right. (Ex. 5 (comparing the 1918 Act (5 years to sue), with 1924 (4 years), and 1926's and today's period (3 years under § 6501)). Nor do the Code provisions with which § 6213 operates suggest that Congress was abrogating the right to sue in Article III court. In an administrative proceeding, it is an administrative entity (here, the IRS) that determines the amount by which a taxpayer's reported tax understates its true liability. That determination, like the assessment that follows it, is accorded deference in Article III courts, *Melot* 562 F. App'x at 652, though the taxpayer may ask the Tax Court to "redetermine" the liability first, and if that happens, the Tax Court could issue a final judgment. § 6214(a). By contrast, in a proceeding to sue outside the administrative regime, an Article III court is asked to calculate the liability and

---

by way of counterclaim … in connection with any claim or refund by the taxpayer." H.R. Rep. No. 69-356 at 39. (Ex.6.) If § 274 was meant to be exclusive, a permissive counterclaim would not be permitted until after the deficiency assessment procedure was completed.

issue a judgment. The United States does not claim deference for an administrative determination in this Article III proceeding.

Moreover, courts have found the common-law right to sue excuses the need for administrative notice in other contexts, *United States v. Berman*, 825 F.2d 1053, 1060 (6th Cir. 1987) (notice of assessment requirement does not restrict the government's right to maintain a civil action), even when the government was pursuing a third party. *Jersey Shore*, 781 at, 979 n.4 and 980; *see also United States v. Ware*, 292 F. App'x 845, 849 (11th Cir. 2008) (government can impose *criminal* tax liability without alleging either a deficiency notice or an assessment, because administrative action is not a prerequisite to liability). Administrative notices are simply not required outside the administrative regime.

LGI relies on the clause in § 6213(a) initially quoted as "no assessment of a deficiency in respect of any [federal income tax] … and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until [a notice of deficiency] has been mailed to the taxpayer." (Dkt. 24 at 1). Elsewhere it substitutes "[the collection of a tax deficiency]" for the "its" in "its collection[,]" a telling alteration. (Dkt. 24 at 5). LGI's implicit contention is that the "its" in "no assessment of a deficiency in respect of any tax … or proceeding in court for its collection" refers to "[the collection of a tax deficiency]" (Dkt. 24 at 5), not the "assessment." That reading makes little sense in the context of the statutory scheme.

Given the broad administrative collection powers that an assessment offers, Congress logically cabined the IRS's power to make them. But the Code, and the case law discussed above, contemplates suits without assessments. § 6501 ("proceeding in court without assessment" within three years). LGI does not appear to have identified any scenario in which

the government would begin the administrative process, issue a deficiency notice, and then

forego the many benefits an assessment affords to sue without assessment.

Indeed, the government has not located a single case in which a court squarely addressed

the common-law suit right and found the deficiency notice was a prerequisite. Aside from the

early cases finding that the Revenue Act of 1926's deficiency procedures were *not* required for

the IRS to enforce debts, *supra* at 5-6, the only civil case that we have located that mentions a

deficiency notice in connection with the common-law right is *Shelter Mutual*, 555 F. Supp. 2d at

931-33. There the court allowed the government to claim interpleader funds to collect for two

years of unassessed taxes, even though the taxpayer alleged that he had "recently" received

deficiency notices and his time to "appeal" the deficiency had not run. *Id.* at 931. The record in

that case, however, shows that the IRS sent an informal notice (Form 4549) of the proposed

adjustments, not a § 6213(a) deficiency notice as the taxpayer suggested. *See* M.D. Tenn. Case

No. 3:07-cv-00112 Dkt. 32-12 (IRS declaration and exhibits). (And if there were deficiency

notices, the ruling would suggest that the common-law suit right is cumulative, not exclusive.)

The authorities LGI does cite concern the administrative context, but none hold that the

deficiency assessment procedures in §§ 6212 and 6213 supplanted the United States' common

law right to sue to collect tax debts. The incentives to select the administrative route mean that

comparatively few decisions squarely address the common law, while decisions discussing

assessments are legion. Those decisions usually have little reason to address suits without

assessment, because the periods for bringing such suits or making assessments expires three

years from the return date, § 6501(a), meaning the time for suit without assessment would have

already run in most assessment-based suits. For example, LGI's very first authority, *Hance v.*

*Commissioner*, 215 F.3d 1336, 2000 WL 745357 (10th Cir. 2000), a non-binding table case, affirms a Tax Court decision, not a district court suit, and states that a deficiency notice is "is the ticket to tax court." *Id*. at *4; *see also, e.g.*, *Cross v. United States*, 149 F.3d 1190, 1998 WL 255054 (10th Cir. 1998) (non-binding case concerning a challenge to *assessments* and reasoning that the notice was a requirement for the *assessments*).[6] As another example, *United States v. Gilbert*, 1990 WL 127163 (D. Ariz. 1990), *amended by* 1991 WL 193585 (1991), *aff'd on other grounds*, 48 F.3d 1229 (9th Cir. 1995) is also non-binding, and also did not address the government's common-law right to bring suit. Instead, it addresses the government's right to assess taxes shown on a return (which LGI recognizes elsewhere (Dkt. 24 at 4)). The government sued to reduce assessments to judgment.[7] An Arizona district court held that the 1983 tax assessment was erroneous because the taxpayer's return "indicated that he owed no taxes," 1991 WL 193585, at * 2. Though in the initial opinion (before amendment) the court makes passing reference to an argument that the lawsuit itself gave sufficient notice "to comply with the statute," the government relied on "Certificates of Assessment," and the case did not otherwise

---

[6] LGI also cites a treatise for the general proposition that taxes require assessment (Dkt. 24 at 4), yet some authorities say otherwise. 4 Casey Fed. Tax Prac. § 13C:41 ("In addition to the summary procedure … the United States may institute suit for collection of [] taxes, whether assessed or not."); *see also id*. § 5:01. Oddly, the same treatise also suggests elsewhere that a deficiency and assessment are required for collections, while acknowledging contrary authority, but the cases it cites in support do not address the common-law right, perhaps because the liabilities were old and the three-year statute for such suits may have passed. *Id*. § 2:01.

[7] The IRS had determined, after an audit, that Gilbert owed taxes for several years. Gilbert had waived his rights to challenge the IRS's computations for several tax years, obviating the need for a deficiency notice. But for 1983, as the government explained in its Ninth Circuit brief, the IRS assessment was based on *income* shown on the return, not the amount the taxpayer reported *due*. *See* 1993 WL 13098141, at *11.

13

address the right to sue without assessment. 1990 WL 127163, at *1. Meanwhile, LGI does not

address *Goldston* or *Howell*, published Tenth Circuit decisions that recognize suits without

assessment and that are difficult to square with the argument that the assessment, and its

precursor steps, are prerequisites in all cases.

      LGI's reliance (Dkt. 24 at 5) on § 7422(e) is also misplaced. That subsection, added 30

years after Congress created the Tax Court and § 6213(a)'s predecessor, nowhere suggests that

the deficiency assessment regime is exclusive. Instead, it addresses situations "where there is

concurrent jurisdiction in the district court … and in the Tax Court." (Ex. 7, H.R. Conf. Rep. No.

83-2543 at 82 (Jul. 26, 1954)). It applies "if" the IRS mails a deficiency notice while a District

Court refund suit for the same tax is already pending, but does not say the IRS *must* send a

notice. A contrary reading raises a host of practical problems. Requiring the IRS to continue

audits during civil discovery to meet a supposed requirement to issue notices of deficiency

during litigation wastes governmental, and judicial resources, or at least imposes a new a duty

for the IRS and DOJ to work in tandem, despite different standards and processes. IRS

guidelines generally call for the audit on an issue to cease once litigation on that issue

commences. *See* Int. Rev. Manual 4.10.11.2.16(2), 2007 WL 9879665. LGI thought it could

"terminate" the audit by filing suit (Ex. 2), and many taxpayers lack the resources to respond to

two governmental inquiries at once.[8]

---

[8] LGI does not address in its motion the government's common-law right to sue for a tax debt, but instead argues that the United States was required to issue a § 6213(a) notice before the general three-year deadline for an assessment ran. (LGI does not dispute that the suit would be timely under the three year statute for suits without assessments.) A statute of limitations defense is "fact based and should not be a basis for dismissal under Fed. R. Civ. P. 12(b)(6)." *See, e.g*., *R.P. v. Santa Fe Pub. Sch*., 2020 U.S. Dist. LEXIS 14929, at *3 (D.N.M. Jan. 28, 2020). To

WHEREFORE, for the foregoing reasons, the motion to dismiss should be denied.

Respectfully submitted February 15, 2023,     DAVID A. HUBBERT
                                              Deputy Assistant Attorney General
                                              */s/ E. Carmen Ramirez*
                                              THOMAS J. SAWYER
                                              E. CARMEN RAMIREZ
                                              ISAAC M. HOENIG
                                              Trial Attorneys
                                              U.S. Department of Justice, Tax Division
                                              P.O. Box 683, Ben Franklin Station
                                              Washington, D.C.  20044
                                              Tel:    (202) 514-8129 (Sawyer)
                                                      (202) 616-2885 (Ramirez)
                                                      (202) 307-5963 (Hoenig)
                                              Thomas.J.Sawyer@usdoj.gov
                                              E.Carmen.Ramirez@usdoj.gov
                                              Isaac.M.Hoenig@usdoj.gov
                                              *Attorneys for the United States of America*

**IT IS HEREBY CERTIFIED** that on February 15, 2023, I served the foregoing by filing it through the Court's CM/ECF system, which will send an electronic copy to all counsel of record.

                                              */s/ E. Carmen Ramirez*
                                              E. Carmen Ramirez

---

survive a motion to dismiss on statute of limitations grounds, the plaintiff need only plausibly allege facts that may support equitable theories such as estoppel. *See id*. LGI does not assert that this Court lacks jurisdiction, only that the United States made a procedural mistake. But the doctrine of judicial estoppel, for example, while narrowly applied, may apply because (1) LGI took a position in the first suit (that the statute of limitations was not an issue, and if it was, LGI would agree to extend it) that was inconsistent with its position in this suit; (2) LGI succeeded in persuading the Court to stay discovery in the first suit based in part on those representations (over the United States' objections); and (3) LGI would derive an unfair advantage from its conduct in this suit. *Ortiz v. New Mexico*, 550 F. Supp. 3d 1020, 1146-48 (D.N.M. 2021).