**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

|  |  |  |
|---|---|---|
| | ) | |
| Liberty Global, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 20-cv-03501 |
| v. | ) | Hon. R. Brooke Jackson |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BRIEF OF AMICUS CURIAE REGARDING THE INVALIDITY OF**
**TEMPORARY TREASURY REGULATIONS SECTION 1.245A-5T**

Section 245A[1] mandates that a deduction "shall be allowed" for a dividend from a foreign corporation to a US shareholder if certain basic requirements are satisfied. The temporary §245A regulations[2] (the "Regulations"), however, invent additional requirements for deduction eligibility, purporting to override the statute and deny the deduction for a broad range of dividends that qualify under the statute. Denying a deduction amounts to imposing a tax, and Treasury lacks that power. *Reardon v. United States*, 491 F.2d 822, 824 (10th Cir. 1974) ("The Commissioner cannot promulgate regulations which impose a tax . . . which has not been imposed by legislative command."). Because the Regulations are contrary to statute and exceed Treasury's rulemaking authority, the Regulations are invalid and must be set aside.

---

[1] Unless otherwise indicated, all "section" or "§" references are to the Internal Revenue Code of 1986, as amended and in effect for the tax year at issue (the "Code").

[2] Temp. Treas. Reg. §1.245A-5T.

### Analysis

**1. The Regulations Are Contrary to the Plain Language of §245A.**

"If there is one title of the United States Code most deserving of attention to text, it is Title 26." *Summa Holdings, Inc. v. Commissioner*, 848 F.3d 779, 789 (6th Cir. 2017). The Regulations disregard that text and invent new requirements and limitations that do not exist in the Code.

> **a. The Basic Statutory Requirements for the §245A Deduction Are Straightforward.**

By its terms, §245A provides a deduction for a dividend received by a corporate US shareholder if: (1) the dividend is made out of the "foreign-source" earnings of a "specified 10-percent owned foreign corporation"; (2) the dividend occurs after December 31, 2017; and (3) the US shareholder has held the stock of the foreign corporation for a specified period. The statute's requirements are clear and uncomplicated. Congress also provided several express, specific limitations on the availability of the deduction. Congress excluded, for example, "hybrid dividends," dividends from certain tax-exempt organizations, and purging distributions of passive foreign investment companies. If the basic statutory elements are satisfied, and no specific exclusions apply, no discretion is provided to Treasury: a deduction "shall be allowed." *Luminant Generation Co. v. EPA*, 675 F.3d 917, 926 (5th Cir. 2012) ("This statutory imperative ['shall'] leaves the agency no discretion to do anything other than ensure that a state's submission meets the [act's] requirements.").

> **b. Treasury Ignored the Statute's Clear Parameters and Concocted Its Own Novel Regulatory Requirements for the §245A Deduction.**

A Treasury Regulation cannot "add[] to the statute something which is not there," *United States v. Calamaro*, 354 U.S. 351, 359 (1957), but the Regulations do just that by "limit[ing] the

amount of the section 245A deduction" to the portion of a dividend not constituting an "ineligible amount." The non-statutory "ineligible amount" is the sum of the "extraordinary reduction amount" and "50 percent of the extraordinary disposition amount." 84 Fed. Reg. at 28400. The "extraordinary reduction amount" consists of certain earnings generated by a foreign corporation during any taxable year ending after December 31, 2017, in which: (1) the controlling domestic shareholder transfers more than 10% of the foreign corporation's stock; or (2) there is a greater than 10% change in the controlling domestic shareholder's overall ownership of the foreign corporation. The "extraordinary disposition amount" is the portion of certain dividends paid out of the corporate shareholder's "extraordinary disposition account," which tracks "extraordinary disposition E&P," which are earnings arising from gain recognized by reason of an "extraordinary disposition," which includes certain transactions occurring during the foreign corporation's "disqualified period." *Id.* These concepts, limitations, and terms simply do not exist in the Code.

### 2.   The Regulations Impose a Non-Statutory Tax.

Despite the highly reticulated international tax provisions of the Code, Treasury thinks that Congress let certain earnings "escape" US taxation. *Id.* Unhappy with the lack of statutory tax on these earnings, Treasury used the Regulations to restrict the §245A deduction even though the earnings clearly meet the statutory requirements for that deduction. By limiting this deduction, Treasury achieves the same effect as taxing the relevant earnings. Without the §245A deduction, these earnings are taxed at full corporate rates when actually or constructively repatriated (with no allowance for foreign taxes paid on such earnings). The Regulations thus attempt to apply a tax to

earnings that Congress explicitly *did not tax* via the backdoor maneuver of limiting an otherwise allowable §245A deduction.

### a.   The Code's International Provisions Are Detailed and Precise.

Before the Tax Cuts and Jobs Act ("TCJA"), US shareholders were subject to current US taxation on certain earnings of their controlled foreign subsidiaries under the "subpart F" regime. The subsidiaries' remaining earnings were subject to US tax only when actually or constructively repatriated. The TCJA imposed a one-time tax under §965 on all previously deferred earnings of certain foreign corporations, retained the subpart F regime (§951), added the Global Intangible Low-Taxed Income ("GILTI") tax (§951A), and added §245A. GILTI operates similarly to subpart F, but with respect to different earnings. Each new provision is detailed and specific.

### b.   The Regulations Effectively Impose a Tax on Earnings that Are Not Subject to Subpart F or GILTI.

The Regulations target two amounts that are not taxed under subpart F or GILTI. The "extraordinary reduction" rules tax earnings of a foreign corporation that are *not* taxed under subpart F or GILTI because of a foreign corporation's change in ownership during the taxable year. Similarly, the "extraordinary disposition" rules tax earnings that are *not* taxed under subpart F or GILTI because Congress did not select an earlier effective date for the GILTI provisions. In each case, Congress chose not to currently tax the foreign earnings targeted by the Regulations. Treasury acknowledges that it lacks authority to tax those earnings under subpart F or GILTI. *See* 84 Fed. Reg. at 28400 ("Treasury . . . do[es] not believe it would be permissible to modify the definition of subpart F income or tested income, or to recharacterize income as subpart F income or tested income, under the authority of section 245A(g)."). Yet Treasury claims authority to indirectly impose an equivalent tax by limiting an otherwise allowable §245A deduction. *Cf.*

*Missouri v. Jenkins*, 515 U.S. 70, 92 (1995) (a court cannot "devise[] a remedy to accomplish indirectly what it admittedly lacks the remedial authority to mandate directly"). Treasury justifies this indirect taxation device through mistaken contentions about the "overall structure of the international provisions" of the TCJA. *See* 84 Fed. Reg. at 28399.

### c. There Is No Structural Rule Requiring That Earnings First Be Subject to Subpart F or GILTI in Order for §245A to Apply.

Treasury correctly notes that amounts taxed under subpart F or GILTI are not eligible for the §245A deduction. The deduction is not necessary, since §959 provides that previously taxed earnings are not taxed again when actually or constructively repatriated. Section 959 is merely a mechanism to avoid double taxation. From this, however, Treasury incorrectly contends that the Code's structure "require[s]" that the §245A deduction "not apply to earnings and profits attributable to income of a type that is properly subject to the subpart F or GILTI regime." 84 Fed. Reg. at 28399. The Code contains no such requirement.

Whether earnings described by Treasury as extraordinary reduction amounts and extraordinary disposition amounts should be subject to US tax is a matter of policy which Congress has already dictated. "The manner in which the law 'could have been written,' . . . has no bearing; what matters is the law the Legislature did enact." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 403 (2010) (citations omitted). The earnings targeted by Treasury are not taxed under subpart F or GILTI and there is no structural rule requiring that earnings be subject to subpart F or GILTI for §245A to apply.

### 3.   The "Extraordinary Disposition" Rules Further Depart from Statutory Text.

#### a.   The "Extraordinary Disposition" Rules Disregard Clear Effective Dates.

While both rules depart from statutory text, the "extraordinary disposition" rules go even further. Treasury devised the "extraordinary disposition" rules because it disliked the effective dates of §§245A, 965, and 951A. Congress made §245A effective for all distributions made after December 31, 2017. The §965 tax applied *retrospectively* to undistributed and previously untaxed income of certain foreign corporations. By statute, that income was measured as of November 2, 2017, or December 31, 2017. After that, the tax was never to apply again. GILTI (§951A) applied *prospectively* to tax US shareholders of certain foreign corporations on certain earnings of those foreign corporations generated in the foreign corporations' tax years beginning after December 31, 2017. For foreign corporations using a calendar year, §951A was effective January 1, 2018. For foreign corporations using a fiscal year, it was effective only later in 2018 (when their next tax year began). That resulted in a period (which Treasury calls the "disqualified period") during which neither the retrospective §965 tax nor the prospective GILTI tax applied to fiscal-year taxpayers. All three of §§965, 951A, and 245A have clear effective dates. Amounts earned by fiscal-year taxpayers that were subject neither to §965 nor §951A, are, nevertheless, eligible for the §245A deduction upon distribution, if they meet the qualifications of that provision.

Treasury did not like that decision, so it constructed a new set of requirements for §245A out of whole cloth. The Regulations displace the TCJA's statutory scheme by impermissibly overriding statutory effective dates. Treasury's rejection of statutory text violates the longstanding

rule that if "the provisions of the act are unambiguous, and its directions specific, there is no power to amend it by regulation." *Koshland v. Helvering*, 298 U.S. 441, 447 (1936).

### b. The "Extraordinary Disposition" Rules Only Partially Apply §245A.

A statute cannot both apply and not apply, and a legislative mandate certainly cannot *partially* apply. Treasury admits that its Regulations act only in situations in which §245A "literal[ly]" applies, but its "extraordinary disposition" rules apply §245A only partially, at a 50% level. 84 Fed. Reg. at 28400. In *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348, 1355–56, 1358 (2018), the Supreme Court struck down a similar attempt by an agency to partially apply a statutory requirement. The statutory language "indicate[d] a binary choice," and the Court concluded that "[t]here is no room in this scheme for a wholly unmentioned 'partial institution' power. . . . The [agency] may (today) think [its] approach makes for better policy, but policy considerations cannot create an ambiguity when the words on the page are clear." *Id.* at 1355, 1358 (citation omitted).

Section 245A states that a deduction "shall be allowed" if express requirements are met. As in *SAS Institute*, nowhere does §245A or any other grant of rulemaking power suggest that Treasury's authority to regulate "whether" a deduction is allowed means "whether *and to what extent*." *Id.* at 1356 (emphasis in original). If Treasury had the power to partially apply statutes, the entire Code would be a matter of Treasury's discretion.

Treasury's attempt to partially apply §245A lays bare its attempt to impose a tax by regulation. Treasury states: "[T]he 50 percent reduction of the section 245A deduction *approximates* the reduced tax rate" that would have applied under GILTI or §965. 84 Fed. Reg. at 28404 (emphasis added). This is a stark admission of gerrymandering §245A to fit Treasury's view of tax policy. Certain earnings were not subject to either GILTI or §965 because they were

7

generated *before* the statutory effective date of the former and *after* the statutory measurement dates of the latter. Because it couldn't apply either tax directly, Treasury conjures an "approximat[ion]" involving made-up "extraordinary disposition accounts." Treasury cannot alter statutory effective dates through backdoor regulations, thereby imposing non-statutory taxes. *NRDC v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 109, 113 n.12 (2d Cir. 2018).

**4.   The Regulations Cannot Be Grounded in the Alleged Abuse of One Transaction.**

The government asserts that the Regulations "shut down engineered transactions aimed at [an] abusive result." Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. at 10. Alleging abuse in a particular transaction, however, does not substitute for citing authority to alter statutory requirements for general taxpayer application. The government must still ground its Regulations in the text of the statute. As discussed below, the government points to no legitimate "gap or silence" that remotely ties the Regulations back to the text of §245A.

Moreover, the Regulations do not accurately target only transactions that Treasury claims are abusive; those rules also apply to many transactions routinely carried out by taxpayers. For the Regulations to target abusive—and *only* abusive—transactions, Treasury's "extraordinary reductions" and "extraordinary dispositions" categories could not exceed the set of "abusive transactions." Amicus can attest to the fact that the Regulations capture a wide range of transactions, with all manner of purposes. For example, "extraordinary reductions" include cost-reducing simplifications of complicated ownership structures and even transactions with unrelated parties in the ordinary course of business. "Extraordinary dispositions" include efficiency-enhancing integrations of business operations.

Treasury targeted these transactions not because they were necessarily abusive, but because

Treasury thought that a "literal" application of the Code was wrong. The tax paid by a taxpayer

carrying out non-abusive transactions is a matter for congressional, not administrative, lawmaking.

The government wants to reframe the legal question of the Regulations' validity as a trial on LGI's

particular facts, but Treasury's Regulations must first find support as a "permissible construction"

of the text of the statute. *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984). As

discussed below, they do not.

### 5. Treasury Lacks Authority to Create an Alternative Legal Framework and to Impose a Tax That Doesn't Exist in the Statute.

Rather than heed its limited Congressional mandate to implement §245A's provisions,

Treasury would rewrite §§951, 951A, and 965 by disregarding the core mechanism of §245A. This

not only crosses the line of permissible statutory interpretation, but constitutes an entirely different

kind of overreach. The Supreme Court has long made clear that Treasury cannot impose a non-

statutory tax by regulation. *Commissioner v. Acker*, 36 U.S. 87 (1959) ("[T]o uphold this addition

to the tax would be to hold that it may be imposed by regulation, which, of course, the law does

not permit."); *see also Reardon*, 491 F.2d at 824 (Tenth Circuit case following *Acker*); *Rite Aid*

*Corp. v. United States*, 255 F.3d 1357, 1359–60 (Fed. Cir. 2001).

### a. Treasury Exceeded Its Rulemaking Authority Under §§245A(g) and 7805(a).

Contrary to Treasury's assertions, the Regulations are not authorized by any specific or

general grant of rulemaking authority. Section 245A(g) simply allows Treasury to prescribe

regulations to "***carry out*** the provisions" of §245A, not rewrite it. Emphasis added. Likewise,

§7805(a), which provides a basic grant of rulemaking authority, does not permit Treasury to

disregard substantive Code provisions. The plain text of §7805(a) only allows Treasury to make rules "for the ***enforcement***" of Title 26.[3] Emphasis added. Treasury can act only in accordance with the text of another statute. "[G]eneral rulemaking authority . . . established to ***enforce*** and ***carry out*** a congressional act" does not "empower[] an agency . . . to promulgate regulations which run far afield from the specific substantive provisions of the act." *Central Forwarding, Inc. v. Interstate Commerce Com.*, 698 F.2d 1266, 1277 (5th Cir. 1983) (emphasis added). Yet the Regulations jettison statutory text—including clear statutory effective dates—and substitute a new regime that has no basis in the Code.

### b. Generic References to Structure and Purpose Cannot Authorize Regulations that Override Unambiguous Statutory Text.

Treasury also lacks authority to regulate under §245A based on its view of the "overall structure of the international provisions." 84 Fed. Reg. at 28399. Treasury's perception of statutory structure cannot displace unambiguous statutory text. *Eagle Pharm., Inc. v. Azar*, 952 F.3d 323, 333 (D.C. Cir. 2020) (rejecting agency's arguments to ignore "literal" statutory text in favor of structural and purposive arguments).

Treasury similarly contends that the plain text of "section 245A" cannot "defeat the purposes of subpart F and GILTI regimes. . . ." 84 Fed. Reg. at 28400. "But purpose must be grounded in text. It cannot be invoked to save the statute from itself." *Summa Holdings*, 848 F.3d at 789. Congress provided precise requirements for the deduction in the text of §245A, which Treasury ignores and replaces with regulatory rules, purportedly to prevent US tax avoidance. 84

---

[3] In fact, §951A's GILTI tax, which the Regulations purport to approximate, was not even part of Title 26 yet for taxpayers subject to the Regulations' "extraordinary disposition" rules, and therefore the Regulations cannot enforce "this title" under §7805(a).

Fed. Reg. at 28400. Here, as elsewhere, Treasury's references to "*tax* avoidance begin to look like efforts at *text* avoidance." *Summa Holdings*, 848 F.3d at 787 (emphasis added).

Where, as in §245A, the statute is unambiguous and Congress has answered "the precise question at issue" (*i.e.*, the qualifications for the §245A deduction), "that intention is the law and must be given effect." *Chevron*, 467 U.S. at 843 n.9. Because the statute sets the parameters under which a deduction "shall be allowed," §245A leaves no "gap or silence with respect to [the] specific task assigned" to Treasury. *Marlow v. New Food Guy, Inc.*, 861 F.3d 1157, 1163 (10th Cir. 2017). The word "shall" imposes a non-discretionary duty, and Treasury cannot ignore the statute's precise requirements and detailed exclusions and substitute its own novel framework. *SAS Inst.*, 138 S. Ct. at 1354 (citation omitted).

### c.   Statutory Silence About "Extraordinary Reductions" and "Extraordinary Dispositions" Doesn't Create Any Gap in the Unambiguous Text of §245A.

The government misapplies *Chevron*, contending that "Congress did not speak to the specific issue addressed by the Regulations, and it was appropriate for Treasury to fill the gap." Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. at 9. Treasury contends that because §245A doesn't say anything about "extraordinary reduction" transactions or "extraordinary disposition" transactions, Treasury can make up those categories along with new rules to govern them. That's tantamount to saying that anything that the statute doesn't prohibit is permitted. Agency authority doesn't work that way. "Were courts to *presume* a delegation of power absent an express *withholding* of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with *Chevron* and quite likely with the Constitution as well." *Railway Labor Executives' Ass'n v. National Mediation Bd.*, 29 F.3d 655, 671 (D.C. Cir. 1994) (en banc) (emphasis in original). The Tenth Circuit has held that statutory silence coupled with unambiguous text leaves

no room for an agency to regulate. "[I]t is only in the ambiguous 'interstices' *within* the statute where silence warrants administrative interpretation." *Marlow*, 861 F.3d at 1164 (emphasis in original) (citation omitted). Section 245A is unambiguous; it contains no such silence.

### d. Congress Recognizes that Treasury Lacked Authority to Promulgate the Regulations.

Treasury waited 18 months after Congress enacted §245A to issue the Regulations. Treasury's delay was presumably due to its struggle with the lack of statutory authority. Since the Regulations were issued, Treasury has tried to rectify its lack of authority by asking Congress to ratify its actions. The Build Back Better Act, passed by the House on November 19, 2021, would amend §245A(g) to authorize Treasury to prescribe prospective regulations that include some of the limitations on the availability of the §245A deduction that are contained in the Regulations. Rules Committee Print 117-18, section 138128(c). If Treasury had statutory authority to issue the Regulations under the version of §245A enacted in the TCJA, the proposed amendment to §245A(g) would be unnecessary. These proposed amendments also included a "no inference" provision regarding "the proper application of any provision of [the Code]" for "distributions made" and "taxable years beginning" before the effective dates of the amendments. *Id.* at section 138128(f). Rather than ratify Treasury's retroactive Regulations, this "no inference" provision highlights Treasury's lack of rulemaking authority.

### Conclusion

The statutory requirements for the §245A deduction are clear and straightforward. Yet the Regulations create a byzantine web of additional non-statutory requirements that deny the deduction in situations where the Code allows it. The additional regulatory requirements are based on nothing more than Treasury's policy preferences. They contradict bedrock principles of

administrative law and attempt to impose a novel, extra-textual, regulatory tax. As shown above, the Regulations impose a one-size-fits-all rule on a wide range of transactions; they apply irrespective of any "abuse" or "tax avoidance." Treasury has vastly exceeded its statutory rulemaking authority and must be held accountable for its administrative overreach. Treasury cannot create novel rules to disallow deductions that Congress has granted and impose a tax that the statute doesn't authorize.

Respectfully submitted this 29th day of December, 2021.

/s/ Jeffrey E. Moeller
JEFFREY E. MOELLER
JONATHAN L. HOLBROOK
HARRISON B. RICHARDS
IVINS, PHILLIPS & BARKER, CHARTERED
1717 K Street NW, Suite 600
Washington, DC 20006
(202) 662-3450
jmoeller@ipbtax.com
*Attorneys for Amicus Curiae*

13