## CITED STATUTORY AND LEGISLATIVE HISTORY DOCUMENTS

**2019:** Limitation on Deduction for Dividends Received From Certain Foreign Corporations and Amounts Eligible for Section 954 Look-Through Exception, 84 Fed. Reg. 28398, 28399-28400, 28404 (June 18, 2019) ................................................................................................................ 2

**2021:** Rules Committee Print 117-18, Title XIII, Subtitle H, Part 1, Subpart A, Sec. 138128(c), (f) ... 6

# DEPARTMENT OF THE TREASURY

**Internal Revenue Service**

**26 CFR Part 1**

**[TD 9865]**

**RIN 1545–BO64**

**Limitation on Deduction for Dividends Received From Certain Foreign Corporations and Amounts Eligible for Section 954 Look-Through Exception**

**AGENCY:** Internal Revenue Service (IRS), Treasury.

**ACTION:** Final temporary regulations.

**SUMMARY:** This document contains temporary regulations under section 245A of the Internal Revenue Code (the ''Code'') that limit the dividends received deduction available for certain dividends received from current or former controlled foreign corporations. This document also contains temporary regulations that limit the applicability of the exception to foreign personal holding company income for certain dividends received by upper-tier controlled foreign corporations from lower-tier controlled foreign corporations and temporary regulations under section 6038 to facilitate administration of certain rules in the temporary regulations. The temporary regulations affect certain U.S. persons that are domestic corporations that receive certain dividends from current or former controlled foreign corporations or are United States shareholders of upper-tier controlled foreign corporations that receive certain dividends from lower-tier controlled foreign corporations. The text of the temporary regulations also serves as the text of the proposed regulations set forth in a notice of proposed rulemaking published in the Proposed Rules section of this issue of the **Federal Register**.

**DATES:**

*Effective date:* These regulations are effective on June 18, 2019.

*Applicability dates:* For dates of applicability, see §§ 1.245A–5T(k), 1.954(c)(6)–1T(b), and 1.6038–2T(m).

**FOR FURTHER INFORMATION CONTACT:** Logan M. Kincheloe at (202) 317–6937 (not a toll-free number).

**SUPPLEMENTARY INFORMATION:**

## Background

### I. In General

This document contains amendments to 26 CFR part 1 under sections 245A, 954(c)(6), and 6038 (the ''temporary regulations''). Any terms used but not defined in this preamble have the meanings given them in the temporary regulations. Added to the Code by section 14101(a) of the Tax Cuts and Jobs Act (the ''Act''), section 245A generally allows a domestic corporation a 100-percent dividends received deduction (the ''section 245A deduction'') for the foreign-source portion of a dividend received after December 31, 2017, from a specified 10 percent-owned foreign corporation (an ''SFC''). Section 954, which predates the Act and remains in effect, generally provides that a dividend received by a controlled foreign corporation (a ''CFC''), as defined in section 957, is included in the CFC's foreign personal holding company income (''FPHCI''), as defined in section 954(c). Pursuant to section 954(c)(6), however, a dividend received by a CFC from a related CFC is not included in the CFC's FPHCI if certain requirements are satisfied (the ''section 954(c)(6) exception'').

The temporary regulations limit the availability of the section 245A deduction and the section 954(c)(6) exception in specific and narrow cases where the deduction or exception, respectively, effectively eliminates subpart F income or income subject to tax under section 951A from the U.S. tax system. Specifically, the temporary regulations address transactions that have the effect of avoiding tax under section 965, 951A, or 951 by inappropriately converting income that should have been subject to U.S. tax into nontaxed income. The temporary regulations also include rules under section 6038 to facilitate administration of certain rules in the temporary regulations. The temporary regulations do not include general rules relating to dividends eligible for the section 245A deduction; those rules will be included in separate guidance.

### II. Scope of Participation Exemption

In order to transition to the new participation exemption system provided under section 245A and certain other provisions of the Act, the Act imposed a tax on certain earnings and profits of a U.S.-owned foreign corporation that had not previously been subject to U.S. tax. *See* section 965. Section 965 was designed to ensure that previously untaxed foreign income of the foreign corporation that accrued before the advent of the participation exemption system generally is subject to U.S. tax (although at a reduced rate). This transition tax applied to the last taxable year of the foreign corporation beginning before January 1, 2018, and generally increased the subpart F income of the foreign corporation by the amount of its previously untaxed earnings as of no later than December 31, 2017.

The Act's legislative history indicates congressional concern that the new participation exemption could heighten the incentive to shift profits to low-taxed foreign jurisdictions or tax havens absent base erosion protections. *See* Senate Committee on the Budget, 115th Cong., Reconciliation Recommendations Pursuant to H. Con. Res. 71, at 365 (Comm. Print 2017) (''Senate Explanation''). For example, without appropriate limits, domestic corporations might be incentivized to shift income to low-taxed foreign affiliates, ''where the income could potentially be distributed back to the [domestic] corporation with no U.S. tax imposed.'' *See id.*

This risk of base erosion is acute with respect to certain types of income, such as passive or mobile income and income derived from intangible property, which historically have posed transfer pricing challenges. To prevent base erosion, the Act retained the subpart F regime (section 951 et. seq.) and enacted a new regime under section 951A for global intangible lowed-taxed income (the ''GILTI regime''), both of which subject certain foreign income of a CFC to current U.S. taxation in the hands of the CFC's United States shareholders (within the meaning of section 951(b)) (each shareholder, a ''U.S. shareholder''). In order to avoid double taxation when a CFC distributes earnings and profits that have been taxed on a current basis to a U.S. shareholder, the earnings and profits are designated as ''previously taxed earnings and profits'' (also known as ''PTEP'') under section 959. Section 959 generally provides that PTEP are not subject to U.S. tax when distributed to a U.S. shareholder.

The subpart F regime, which was established under the Revenue Act of 1962, Public Law 87–834, sec. 12, 76 Stat. at 1006, subjects certain income earned by a CFC to U.S. taxation in the hands of the CFC's U.S. shareholders on a current basis at the full ordinary tax rate, regardless of whether the CFC distributes the earnings attributable to such income. H.R. Rep. No. 1447 at 58 (1962). In general, the subpart F regime applies to certain passive or highly mobile income in order to address base erosion concerns. Thus, for example, section 954(c) provides that subpart F income includes FPHCI. FPHCI includes certain types of passive or mobile income that are relatively easy to situate in tax-advantaged jurisdictions, such as dividends, interest, rents, and royalties.

The GILTI regime generally subjects a CFC's U.S. shareholders to current

Federal Register / Vol. 84, No. 117 / Tuesday, June 18, 2019 / Rules and Regulations 28399

taxation on intangible income earned by the CFC in a manner similar to the treatment of a CFC's subpart F income. *See* section 951A; *see also* Senate Explanation at 366 (explaining that such income is often associated with profit shifting). Intangible income is determined for this purpose on an aggregate basis at the U.S. shareholder level and is based on a formulaic approach under which a ''normal return'' equal to 10 percent of the basis of certain tangible assets is calculated and then each dollar of income above the ''normal return'' is effectively treated as intangible income (regardless of whether such income is actually attributable to intangible property). *See* Senate Explanation at 366. However, for purposes of this determination, certain income of the CFC—such as income taxed under another Code provision (for example, under the rules for subpart F income in sections 951 through 964 or under section 882 in the case of income effectively connected with the conduct of a U.S. trade or business), immobile income (such as foreign oil and gas extraction income), or highly taxed income that is excluded from subpart F income by reason of the high-tax exception of section 954(b)(4)—is not taken into account. *See also id.* (''[C]ertain items of income earned by CFCs should be excluded from the GILTI, either because they should be exempt from U.S. tax—as they are generally not the type of income that is the source of base erosion concerns—or are already taxed currently by the United States''). The CFC's U.S. shareholders are subject to current U.S. tax on the CFC's income in excess of the CFC's normal return, potentially at a reduced rate through a deduction under section 250, at the corporate U.S. shareholder level. The differing treatment under the GILTI regime with respect to excess returns (taxed currently, though potentially at a reduced rate) versus normal returns (exempt from tax) generally has the effect of differentiating between income that poses base erosion concerns and income that does not pose such concerns. The GILTI regime applies in the first taxable year of a CFC beginning on or after January 1, 2018. Section 245A applies to distributions made by SFCs (which include CFCs) on or after that date.

The rules under section 959 generally treat PTEP (including PTEP that arise by reason of the subpart F regime, the GILTI regime, or the transition tax under section 965) as being distributed before non-previously taxed earnings and profits and also prevent section 245A from applying to PTEP. *See* section 959(c) (providing ordering rules that treat PTEP as being distributed first) and section 959(d) (providing that a distribution of PTEP to a U.S shareholder is not treated as a dividend). Thus, both the interaction of the definitions of subpart F income and tested income with the ordering rules for distributions of PTEP and the overall structure of the international provisions of the Act contemplate that only residual earnings remaining after the potential application of sections 951(a), 951A, and 965 generally are eligible for the section 245A deduction. That is, section 245A(a) applies only to certain ''dividends'' received from foreign corporations. Therefore, sections 951(a), 951A, and 965 generally have priority over section 245A because, when they apply to a foreign corporation's earnings, distributions of those earnings do not qualify as dividends under section 959(d), and, therefore, section 245A does not apply.

The statutory text of the participation exemption system under section 245A, the GILTI regime, the subpart F regime, and the PTEP rules collectively operate as a comprehensive framework with respect to a CFC's foreign earnings after the application of the transition tax under section 965. A central feature of this regime is that income derived by CFCs is eligible for the section 245A deduction only if the earnings being distributed have not been first subject to the subpart F or GILTI regimes. The scope of the section 245A deduction (and the authority set forth in section 245A(g)) is thus informed not only by the text of section 245A in isolation, but also by the role of section 245A in the overall structure of the international provisions and its interaction with the subpart F and GILTI provisions.

Section 245A(g) provides that the Secretary shall issue such regulations as are necessary or appropriate to carry out the provisions of section 245A.

### III. Scope of Section 954(c)(6)

Section 954(c)(6) was enacted by the Tax Increase Prevention and Reconciliation Act of 2005, Public Law 109–222. In general, and subject to certain limitations, the section 954(c)(6) exception is intended to facilitate intragroup foreign-to-foreign funds flows by providing that dividends, interest, rents, and royalties received or accrued by a CFC from another related CFC are not treated as FPHCI to the extent attributable or properly allocable to income of the related person which is neither subpart F income nor income treated as effectively connected with the conduct of a trade or business in the United States. *See* H.R. Rep. No. 109–304 at 45 (2005). Section 954(c)(6)(A) also provides that the Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the provision, including regulations to prevent the abuse of the purposes of the provision. As most recently extended by the Consolidated Appropriations Act of 2016, Public Law 114–113, section 954(c)(6) applies to taxable years of foreign corporations beginning after December 31, 2005, and before January 1, 2020, and to taxable years of U.S. shareholders with or within which such taxable years of foreign corporations end.

Notice 2007–9, 2007–5 I.R.B. 401, provides guidance under section 954(c)(6). The notice describes additional guidance that the Treasury Department and the IRS intend to issue regarding the application of section 954(c)(6), including certain anti-abuse rules.

### Explanation of Provisions

### I. Overview

The transition tax, the subpart F and GILTI regimes, and the participation exemption under section 245A together form a comprehensive and closely integrated set of tax rules with respect to the earnings of foreign corporations with requisite levels of U.S. ownership. These related provisions must be read and interpreted together in order to ensure that each provision functions as part of a coherent whole, as intended. Although the section 245A deduction is generally available for untaxed foreign-source earnings, read collectively this integrated set of statutory rules can be reasonably understood to require that the deduction not apply to earnings and profits attributable to income of a type that is properly subject to the subpart F or GILTI regimes, which address base erosion-type income. Otherwise, as explained in Part II of this Explanation of Provisions, the section 245A deduction could undermine the anti-base erosion measures that Congress intended to prevent income shifting. Accordingly, and consistent with the coherent functioning of the interlocking statutory scheme for taxation of CFC earnings, the section 245A deduction generally will not apply to distributions of earnings and profits that are attributable to subpart F income or tested income. The interpretation reflected in these rules ensures that these provisions will operate compatibly with, not contradictorily to, each other.

Section 245A is designed to operate residually, such that the section 245A

deduction generally applies to any earnings of a CFC to the extent that they are not first subject to the subpart F regime, the GILTI regime, or the exclusions provided in section 245A(c)(3) (and were not subject to section 965). That is, the text of the subpart F and GILTI rules explicitly defines the types of income to which they apply, and section 245A applies to any remaining untaxed foreign earnings. Under ordinary circumstances, this formulation works appropriately, as earnings are first subject to the subpart F or GILTI regimes before the determination of dividends to which section 245A could potentially apply. However, in certain atypical circumstances, a literal application of section 245A (read in isolation) could result in the section 245A deduction applying to earnings and profits of a CFC attributable to the types of income addressed by the subpart F or GILTI regimes—the specific types of earnings that Congress described as presenting base erosion concerns. These circumstances arise when a CFC's fiscal year results in a mismatch between the effective date for GILTI and the final measurement date under section 965 or involve unanticipated interactions between section 245A and the rules for allocating subpart F income and GILTI when there is a change in ownership of a CFC. Moreover, the Treasury Department and the IRS are aware that some taxpayers are undertaking transactions with a view to eliminating current or future taxation of all foreign earnings of a CFC, including earnings attributable to base erosion-type income, by structuring into these situations. These transactions have the potential to substantially undermine the anti-base erosion framework for post-2017 foreign earnings.

Based on the structure and history of the international provisions of the Code, including changes made by the Act, the Treasury Department and the IRS have concluded that section 245A was not intended to eliminate taxation with respect to the foreign earnings of a CFC that are attributable to income of a type that is subject to taxation under the subpart F or GILTI regimes. In these cases where the literal effect of section 245A would reverse the intended effect of the subpart F and GILTI regimes, this conflict is best resolved, and the structure of the statutory scheme is best preserved, by limiting section 245A's effect. The Treasury Department and the IRS do not believe Congress intended section 245A to defeat the purposes of subpart F and GILTI regimes in these instances. Accordingly, given the authority in section 245A(g) directing the Secretary to issue such regulations as are necessary or appropriate to carry out the provisions of section 245A, and the authority under section 7805(a) to issue rules and regulations made necessary by reason of changes in the tax laws, the temporary regulations under section 245A are designed to ensure that the section 245A deduction operates properly within the context of a closely coordinated set of rules and, as a result, is not available to eliminate the taxation of subpart F income and tested income in these limited circumstances. However, consistent with the broad application of section 245A, the temporary regulations apply only to certain well-defined circumstances in which subpart F or tested income earned by a CFC would otherwise escape taxation to its U.S. shareholders as a result of the unanticipated interaction of section 245A and certain rules applicable to the inclusion of subpart F income and GILTI under sections 951(a) and 951A, respectively.

To prevent the avoidance of U.S. tax in these specific and narrow circumstances, the temporary regulations limit the section 245A deduction only with respect to certain dividends received by a domestic corporation in connection with specific transactions that facilitate the avoidance of taxation of subpart F income or tested income and that, in many cases, may have been entered into with a purpose of avoiding the consequences of the new international tax regime as adopted by Congress in the Act. This limited denial ensures that the section 245A deduction will continue to apply to earnings and profits that are attributable to all other classes of income to which Congress intended them to apply. The Treasury Department and the IRS emphasize, however, that when the requirements of section 245A as properly construed are satisfied, it would not be permissible under the statute for the section 245A deduction to be denied for these other classes of income—even if, for example, taxpayers choose to generate such income to avail themselves of the benefits of the deduction. The Treasury Department and the IRS furthermore do not believe it would be permissible to modify the definition of subpart F income or tested income, or to recharacterize income as subpart F income or tested income, under the authority of section 245A(g).

Similar to section 245A, the exemption from subpart F income under section 954(c)(6) can be used in the context of certain transactions to avoid taxation of income that would otherwise be taxed under the subpart F or GILTI regimes. Such transactions are not dependent upon the availability of section 245A at the level of the United States shareholder. This type of concern was first generally described in Notice 2007–9, but has been exacerbated by the enactment of section 951A as part of the Act because (1) dividends qualifying for section 954(c)(6) generally are not treated as tested income pursuant to section 951A(c)(2)(A)(i)(IV); and (2) the same structured transactions used to avoid subpart F inclusions can also be used to avoid GILTI inclusions. Given the authority in section 954(c)(6)(A) for the Treasury Department and the IRS to issue regulations preventing the abuse of section 954(c)(6), the temporary regulations under section 954(c)(6) are designed to ensure that the section 954(c)(6) exception is not used to erode the U.S. tax base through certain transactions preventing the taxation of income that would otherwise be taxed under the subpart F or GILTI regimes. Consistent with the temporary regulations issued under section 245A, these rules are targeted to ensure that the section 954(c)(6) exception is not available for this limited category of earnings.

### II. Limitation of Amounts Eligible for Section 245A Deduction

#### A. Scope

In the case of a dividend received by a domestic corporation from an SFC, the temporary regulations limit the amount of the section 245A deduction to the portion of a dividend not constituting an ''ineligible amount.'' *See* § 1.245A–5T(b). In general, the ineligible amount is the sum of (i) 50 percent of the portion of a dividend attributable to certain earnings and profits resulting from transactions between related parties during a period after the measurement date under section 965(a)(2) and in which the SFC was a CFC but during which section 951A did not apply to it (referred to as the ''extraordinary disposition amount'') and (ii) the portion of a dividend attributable to certain earnings and profits generated during any taxable year ending after December 31, 2017, in which the domestic corporation reduces its ownership of the CFC (referred to as the ''extraordinary reduction amount'').

#### B. Extraordinary Disposition Amount

Under the Act, there may be a gap between when section 951A first applies to the U.S. shareholders of a CFC (as of its first taxable year beginning after December 31, 2017) and the last date on which the earnings and profits of the CFC are measured for purposes of

deemed to act in concert for purposes of the temporary regulations with respect to transactions described in section 964(e)(4).

### III. Limitation of Amount Eligible for Section 954(c)(6) Exception With Respect to Certain Dividends

*A. In General*

As described in Part I of this Explanation of Provisions, the section 954(c)(6) exception may cause dividends from one CFC to another to result in tax consequences similar to, but not dependent upon, those that can be effectuated using section 245A in conjunction with the disqualified period, section 951(a)(2)(B), or the repeal of section 958(b)(4).

To protect against avoidance of the rules for extraordinary dispositions (described in Part II.B of this Explanations of Provisions), the temporary regulations rely on authority under section 954(c)(6)(A) to prevent the section 954(c)(6) exception from applying in cases where a dividend from a lower-tier CFC to an upper-tier CFC would be an extraordinary disposition amount if distributed directly to the section 245A shareholders of the lower-tier CFC. *See* § 1.245A–5T(d). In these cases, the section 954(c)(6) exception applies only to the extent that the amount of the dividend exceeds the sum of each section 245A shareholder's extraordinary disposition account with respect to the lower-tier CFC, divided by the aggregate ownership of all U.S. tax residents of the upper-tier CFC that have section 951(a) inclusions and multiplied by 50 percent. The amount is divided by the aggregate ownership of these U.S. tax residents to take into account the fact that the U.S. tax residents (including individuals) will include in gross income a pro rata share of the portion of the dividend not eligible for the section 954(c)(6) exception. The amount is multiplied by 50 percent in order to provide similar treatment for a dividend received by a section 245A shareholder from a CFC and a dividend received by an upper-tier CFC from a lower-tier CFC. In both cases, the 50 percent reduction of the section 245A deduction approximates the reduced tax rate by reason of the deduction provided under section 250(a)(1)(B) with respect to section 951A inclusions or section 965(c) with respect to the transition tax.

Unlike the disallowance of the section 245A deduction under § 1.245A–5T(b) with respect to an extraordinary disposition amount, which applies only to corporate U.S. shareholders, the limitation to the application of the section 954(c)(6) exception with respect to a dividend received by an upper-tier CFC can result in a subpart F inclusion to any U.S. shareholder, including individuals. In addition, the temporary regulations limit the section 954(c)(6) exception in these cases, rather than limiting the application of section 245A only when the lower-tier CFC earnings and profits are distributed through intervening CFCs to a section 245A shareholder. This approach prevents deferral of tax with respect to the applicable subpart F income or tested income and minimizes the administrative and compliance burdens that would be created by continuing to track the relevant earnings at the upper-tier CFC.

Similarly, to prevent these inappropriate uses of the section 954(c)(6) exception to avoid the rules for extraordinary reductions (described in Part II.C of this Explanation of Provisions), the temporary regulations apply to limit the amount of any distribution from that CFC out of earnings and profits attributable to subpart F income or tested income that can qualify for the section 954(c)(6) exception in a taxable year in which an extraordinary reduction occurs with respect to the stock of a CFC. Similar to the rules relating to extraordinary disposition amounts, the limitation to the section 954(c)(6) exception with respect to a dividend received by an upper-tier CFC can result in a subpart F inclusion to any U.S. shareholder, including individuals. To the extent a CFC-to-CFC dividend otherwise satisfies the requirements of section 954(c)(6), it is eligible for the section 954(c)(6) exception only to the extent it exceeds the distributing lower-tier CFC's "tiered extraordinary reduction amount," taking into account certain prior inclusions under section 951(a). *See* § 1.245A–5T(f)(1). Such amount is equal to the upper-tier CFC's ownership percentage in the lower-tier CFC multiplied by the lower-tier CFC's subpart F income and tested income for the taxable year, with the resulting product reduced by four amounts. The first amount is the pro rata share of the lower-tier CFC's subpart F income and tested income for the taxable year that is taken into account by U.S. tax residents and attributable to the shares of the lower-tier CFC owned by the upper-tier CFC. The second amount is the amount included in an upper-tier CFC's subpart F income resulting from prior dividends paid by the lower-tier CFC giving rise to tiered extraordinary reduction amounts or the application of section 245A(e). The third amount is for certain prior extraordinary reduction amounts with respect to the lower-tier CFC arising in cases in which the lower-tier CFC was a first-tier CFC at some point in the taxable year and paid a dividend to one or more controlling section 245A shareholders at that time. The fourth amount is for subpart F income and tested income taken into account by a U.S. tax resident as a result of an issuance of stock directly by the lower-tier CFC during the taxable year. *See* § 1.245A–5T(f)(2). Comments are requested as to whether a lower-tier CFC's tiered extraordinary reduction amount should be reduced for a pro rata portion of a dividend paid on stock of the lower-tier CFC that was held by non-U.S. shareholders before and after an extraordinary reduction. For purposes of applying § 1.245A–5T(f)(1) and (2) in taxable years of a lower-tier CFC beginning on or after January 1, 2018, and ending before June 14, 2019, a transition rule is provided such that the tiered extraordinary reduction amount of a lower-tier CFC is determined by treating the lower-tier CFC's subpart F income for the taxable year as if it were neither subpart F income nor tested income. *See* § 1.245A–5T(f)(3).

The rule in § 1.245A–5T(f)(1) applies to both actual distributions and deemed distributions that occur by reason of stock dispositions subject to section 964(e)(1) but not section 964(e)(4). Dispositions subject to section 964(e)(1) but not section 964(e)(4) are treated as dividends from the target foreign corporation (or other entity whose earnings and profits gave rise to a dividend under section 964(e)(1)) to the selling CFC and, thus, must be tested for eligibility under section 954(c)(6). Additionally, ordering and coordination rules apply with respect to the rules relating to the availability of the section 954(c)(6) exception and generally mirror the rules for the section 245A deduction by giving priority to § 1.245A–5T(f) over § 1.245A–5T(d). *See* § 1.245A–5T(g)(4)(ii). As in the rules relating to extraordinary reduction amounts, a controlling section 245A shareholder of a lower-tier CFC may elect to close the taxable year of the CFC in cases where an extraordinary reduction occurs and the CFC would have a tiered extraordinary reduction amount. *See* § 1.245A–5T(e).

Finally, the Treasury Department and the IRS are studying whether § 1.245A–5T(f), or a similar rule, should also apply to dividends received by an upper-tier CFC from a lower-tier CFC where such CFCs are owned by individuals and there may be a reduction in the individuals' ownership of the lower-tier CFC. Individuals are

G:\M\17\MISC\RECONCILIATION_RCP.XML

November 3, 2021

**Rules Committee Print 117–18**

**Text of H.R. 5376, Build Back Better Act**

[Showing the text of H.R. 5376, as reported by the Committee on the Budget, with modifications.]

# TITLE I—COMMITTEE ON AGRICULTURE

## Subtitle A—General Provisions

**SEC. 10001. DEFINITIONS.**

In this title:

(1) The term ''insular area'' has the meaning given such term in section 1404 of the National Agricultural Research, Extension, and Teaching Policy Act of 1977 (7 U.S.C. 3103).

(2) The term ''Secretary'' means the Secretary of Agriculture.

## Subtitle B—Forestry

**SEC. 11001. NATIONAL FOREST SYSTEM RESTORATION AND FUELS REDUCTION PROJECTS.**

(a) APPROPRIATIONS.—In addition to amounts otherwise available, there are appropriated to the Secretary for fiscal year 2022, out of any money in the Treasury not otherwise appropriated, to remain available until September 30, 2031—

1  year beginning before the taxable years to which such
2  amendments apply.

3  **SEC. 138128. DEDUCTION FOR FOREIGN SOURCE PORTION**
4  **OF DIVIDENDS LIMITED TO CONTROLLED**
5  **FOREIGN CORPORATIONS, ETC.**

6  (a) IN GENERAL.—Section 245A is amended—

7  (1) in subsections (a), (c)(1), and (c)(2), by
8  striking "specified 10-percent owned foreign cor-
9  poration" each place it appears and inserting "con-
10  trolled foreign corporation", and

11  (2) by striking subsection (b).

12  (b) MODIFICATIONS RELATED TO DETERMINATION
13  OF STATUS AS A CONTROLLED FOREIGN CORPORA-
14  TION.—

15  (1) Subpart F of part III of subchapter N of
16  chapter 1 is amended by inserting after section
17  951A the following new section:

18  **"SEC. 951B. AMOUNTS INCLUDED IN GROSS INCOME OF**
19  **FOREIGN CONTROLLED UNITED STATES**
20  **SHAREHOLDERS.**

21  "(a) IN GENERAL.—In the case of any foreign con-
22  trolled United States shareholder of a foreign controlled
23  foreign corporation—

24  "(1) this subpart (other than sections 951A,
25  951(b), and 957) shall be applied with respect to

G:\M\17\MISC\RECONCILIATION_RCP.XML

1818

1  (B) by striking "Paragraph (1)" in the
2  last sentence and inserting "Paragraphs (1)
3  and (4)".
4  (4) Section 959(b) is amended—
5  (A) by striking "the earnings and profits
6  of a controlled foreign corporation" and insert-
7  ing "the earnings and profits of a foreign cor-
8  poration",
9  (B) by striking "another controlled foreign
10  corporation" and inserting "a controlled foreign
11  corporation",
12  (C) by striking "such other controlled for-
13  eign corporation" and inserting "such con-
14  trolled foreign corporation", and
15  (D) by striking "of such United States
16  shareholder in the controlled foreign corpora-
17  tion" and inserting "of such United States
18  shareholder in the foreign corporation".
19  (5) The table of sections for subpart F of part
20  III of subchapter N of chapter 1 is amended by in-
21  serting after the item relating to section 951A the
22  following new item:

> "Sec. 951B. Amounts included in gross income of foreign controlled United States shareholders.".

23  (c) CERTAIN OTHER MODIFICATIONS.—

1819

1  (1) Section 245A(e)(4) is amended by striking ''an amount received'' and all that follows through ''for which the controlled foreign corporation received a deduction'' and inserting ''any dividend received from a controlled foreign corporation for which such controlled foreign corporation received a deduction''.

2  (2) Section 245A(g) is amended to read as follows:

''(g) REGULATIONS.—The Secretary shall prescribe such regulations or other guidance as may be necessary or appropriate to carry out the purposes of this section, including regulations or other guidance for—

    ''(1) the treatment of United States shareholders owning stock of a controlled foreign corporation through a partnership, and

    ''(2) the denial of all or a portion of the deduction under this section with respect to dividends received from foreign corporations in situations in which—

        ''(A) any portion of the dividend is out of earnings and profits arising from transactions with related parties which—

            ''(i) do not occur in the ordinary course of a trade or business, and

1           ''(ii) occur on or after January 1,
2      2018, and during a taxable year to which
3      section 951A did not apply, or
4      ''(B) a transfer or issuance of stock on or
5      after January 1, 2018, results in a reduction in
6      a United States shareholder's pro rata share of
7      a controlled foreign corporation's subpart F in-
8      come or tested income (as defined in section
9      951A).''.
10 (d) CONFORMING AMENDMENTS.—
11     (1) Section 91 is amended—
12         (A) in subsection (a), by striking ''specified
13     10-percent owned foreign corporation (as de-
14     fined in section 245A)'' and inserting ''con-
15     trolled foreign corporation'', and
16         (B) in subsection (e), by striking ''specified
17     10-percent owned foreign corporation'' and in-
18     serting ''controlled foreign corporation''.
19     (2)(A) The heading of section 245A is amended
20 by striking ''**SPECIFIED 10-PERCENT OWNED**
21 **FOREIGN CORPORATIONS**'' and inserting ''**CON-**
22 **TROLLED FOREIGN CORPORATIONS**''.
23     (B) The item relating to section 245A in the
24 table of sections for part VIII of subchapter B of
25 chapter 1 is amended by striking ''specified 10-per-

1823

    (B) by striking "SPECIFIED 10-PERCENT OWNED FOREIGN CORPORATION" in the heading and inserting "CONTROLLED FOREIGN CORPORATION".

 (e) EFFECTIVE DATES.—

  (1) IN GENERAL.—Except as otherwise provided in this subsection, the amendments made by this section shall apply to distributions made after the date of the enactment of this Act.

  (2) MODIFICATIONS RELATED TO DETERMINATION OF STATUS AS A CONTROLLED FOREIGN CORPORATION.—The amendments made by subsection (b) shall apply to taxable years of foreign corporations beginning after the date of the enactment of this Act, and taxable years of United States persons in which or with which such taxable years of foreign corporations end.

 (f) NO INFERENCE REGARDING CERTAIN MODIFICATIONS.—The amendments made by subsections (b)(1), (b)(3), (b)(5), and (c) shall not be construed to create any inference with respect to the proper application of any provision of the Internal Revenue Code of 1986 with respect to distributions made, or taxable years beginning, respectively, before the distributions or taxable years, respectively, to which such amendments apply.