IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge R. Brooke Jackson

Civil Action No. 1:20-cv-03501-RBJ

LIBERTY GLOBAL, INC.,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

This is before the Court on plaintiff Liberty Global, Inc.'s motion for summary judgment, ECF No. 32. For the reasons outlined below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Liberty Global, Inc. (LGI) argues that the § 245A temporary regulations (the temporary regulations) adopted by the Treasury Department on June 18, 2019 are invalid, and that it is entitled to a refund of the $104,487,574 it paid in taxes for the 2018 tax year. LGI also asserts it is entitled to a refund of $4,802,274 in penalties and interest it was assessed in the process of challenging the temporary regulations.

The income at issue was income from the "TGH transaction." In that transaction, which occurred in December 2018, an LGI affiliate sold its interest in Telenet Group Holding (TGH), a Belgian company, to LGI's parent company, Liberty Global (based in the UK). Under the relevant tax laws at the time, LGI was required to recognize income equal to its share of gain

1

from the TGH transaction. It sought to deduct that income using § 245A of the Tax Cuts and Jobs Act of 2017 (TCJA), Pub. L. No. 115-97, 131 Stat. 2054 (2017). LGI claims that it met the requirements to receive the § 245A deduction for the TGH transaction. However, because the temporary regulations, adopted in June 2019, were made retroactive, LGI did not receive the full deduction.

Under the statutory scheme of § 245A, domestic corporations are eligible for a dividend-received deduction for the portion of dividends paid to a U.S. shareholder from a controlled foreign corporation (CFC). Section 245A was designed to help transition the U.S. tax system into a participation-exemption system. Section 245A allows corporations to avoid U.S. residual tax when they repatriate certain foreign earnings, allowing U.S. corporations to better compete with foreign companies by eliminating an additional level of tax. This section works in concert with a global intangible low-taxed income (GILTI) tax, which deems a fixed percentage of CFC income to be taxable as if it were earned in the United States. In sum, GILTI taxes a fixed percentage of CFC income deemed earned in the U.S., and §245A exempts the remainder of CFC income from U.S. residual taxes when it is repatriated—these sections combine to form the basis of the new participation-exemption tax system.

Congress realized that §245A's dividend-received deduction might incentivize taxpayers to "allocate income that would otherwise be subject to the full U.S. corporate tax rate to foreign affiliates . . . where the income could potentially be distributed back to the U.S. with no U.S. tax imposed." *See* Senate Budget Committee Report, S. Prt. 115-20, at 370. Based on the legislative history, it appears that Congress intended that only earnings that are exempt from GILTI would be eligible for the § 245A dividend-received deduction. Otherwise, some taxable foreign-source income might escape both current taxation and taxation as a dividend.

2

But the effective dates of various sections in the TCJA did not achieve the desired interaction between GILTI and § 245A for CFCs with non-calendar year ends.  The TCJA was enacted on December 22, 2017 and § 245A was effective for distributions made after December 31, 2017.  As a result, a U.S. shareholder of stock in a CFC with a non-calendar year end could receive dividends from that CFC and take the § 245A deduction beginning January 1, 2018.  However, the GILTI rules were not effective until the CFC's first tax year beginning after December 31, 2017.

For corporations that have a non-calendar tax year, a U.S. shareholder's earnings from a CFC may not have been subject to GILTI until some later date in 2018, even though they could take the § 245A deduction for those earnings.  Because of the lack of uniformity in the effective dates between the GILTI regime and § 245A, a CFC's earnings that would have been subject to tax under the GILTI regime (if it had been effective at that time) were able to be paid as a dividend that was eligible for deduction under § 245A.  That would mean that as foreign-source income was being repatriated for corporations with non-calendar tax years, it would not be subject to *any* taxation because of the § 245A deduction.

According to the Treasury Department, it promulgated the temporary regulations to address the mismatch between the effective dates for the GILTI regime and § 245A.  The temporary regulations were promulgated to prevent transactions just like the TGH transaction.  The Treasury Department knew of transactions like the TGH transaction as early as October 2018—Treasury Department assistant deputy Chip Harter discussed the need for retroactive regulations to prevent these transactions under § 245A because they undermined anti-base erosion policies.  *See* ECF No. 32-1.  Specifically, the temporary regulations limited "the availability of the § 245A deduction . . . exception in specific and narrow cases where the

3

deduction or exception, respectively, effectively eliminates subpart F income or income subject to tax under § 951A from the U.S. tax system." Limitation on Deductions for Dividends Received From Certain Foreign Corporations (hereinafter "Temporary Regulations"), 84 Fed. Reg. 28398 (June 18, 2019) (to be codified at 26 CFR part 1).

The temporary regulations were promulgated with retroactive effect under 26 U.S.C. 7805(b)(2), which allows Treasury Department regulations to apply retroactively when promulgated within eighteen months of the enactment of the underlying statute (here, the TCJA). The temporary regulations were promulgated on June 18, 2019, days before the § 7805(b)(2) eighteen-month deadline would have passed. LGI moved for summary judgment on the issue of the validity of the temporary regulations. Oral argument on that motion was held on February 25, 2022.

## II.   STANDARD OF REVIEW

A motion for summary judgment should be granted where there is "no genuine dispute of material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if there is "sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). An issue of fact is material if it is essential to the proper disposition of the claim. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party moving for summary judgment bears the burden of showing a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When determining a motion for summary judgment, the Court must view the record and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Adler*, 144 F.3d at 670.

### III.  ANALYSIS

Plaintiffs advance several theories under which the temporary regulations are invalid. First, it argues that the Treasury Department did not have authority to issue the temporary regulations because they were contrary to the express language of the statute, and because there was no ambiguity in the language of the statute that would give the Treasury Department gap-filling authority to promulgate regulations. Second, it argues that the temporary regulations are invalid because the Treasury Department did not have authority to make the temporary regulations retroactive. Third, it argues that the temporary regulations are invalid because they were not promulgated in compliance with the Administrative Procedure Act's (APA) notice and comment requirements.

The parties recognized at oral argument that there is still an issue of fact that must be resolved: whether the TGH transactions and the actions LGI took to attempt to receive the § 245A deduction complied with the applicable tax laws. However, that issue is not material to the determination of the validity of the temporary regulations—it only affects whether LGI is entitled to judgment as a matter of law on that issue.

Any of LGI's arguments, if correct, could be sufficient to show the invalidity of the temporary regulations. In this order I do not reach or decide LGI's first or second arguments, because I conclude that LGI has shown that it is entitled to judgment as a matter of law on the invalidity of the temporary regulations on the basis that they were promulgated without notice and comment. To find the temporary regulations invalid for improper promulgation, I must address three issues relating to notice and comment: (1) whether the Treasury Department was required to comply with APA notice and comment procedures in promulgating the temporary regulations, (2) whether the Treasury Department had good cause in this instance to depart from

5

the requirement to comply with notice and comment procedures, and (3) whether the Treasury Department's failure to comply with notice and comment procedures was harmless error.  I address these issues in turn.

### A. Whether the Treasury Department was Required to Comply with Notice and Comment Procedures in Issuing the Temporary Regulations

LGI argues that although the Internal Revenue Code (IRC) contemplates Treasury Department authority to issue temporary regulations in § 7805, that contemplation does not, without a clear expression from Congress, excuse temporary regulations from the requirements of the APA; namely, pre-promulgation notice and comment.  *Id*. at 18.

LGI cites two cases to support its position that the grant of authority to issue temporary regulations in § 7805 does not excuse those temporary regulations from compliance with APA procedures.  *Id*.  The first is *Chamber of Commerce v. Internal Revenue Serv.*, 2017 WL 4682049 (W.D. Tex. Sept. 29, 2017).  There the court made clear that the grant of authority to promulgate temporary regulations in § 7805 of the IRC "does not excuse the Agencies from the notice-and-comment procedure required by the APA."  *Id*. at *7.  The Treasury Department argued that the legislative history of the IRC showed a clear congressional intent that the IRS be able to pass temporary regulations that would be effective immediately without the thirty-day notice and comment period.  *Id.*  However, the court wrote that it would "not disregard explicit directives of the APA in favor of legislative history."  *Id*.  The government's response is simply that the decision is wrong.

In the second case, *Intermountain Ins. Serv. of Vail Liab. Co. v. Comm'r*, 134 T.C. 211 (2010), only the concurrence is relevant to the point that LGI seeks to make.  The concurrence states that while the legislative history makes frequent mention of temporary regulations that

were issued with immediate effect, "this alone hardly suggests Congress meant to waive notice and comment for all temporary regulations." *Id*. at 246.

LGI also cites a case that is informative, but not directly analogous: *Mann Construction, Inc. v. United States*, 2022 WL 619822 (6th Cir. Mar. 3, 2022).[1]  In that case, the government argued that the Congress had implicitly ratified IRS traditional non-conformance with APA notice and comment procedures.  The Sixth Circuit wrote that the government had identified "nothing beyond Congress's 'mere acquiescence' to the IRS's non-conforming practices over the years, which does not suffice."  *Id*. at *6 (quoting *Hannah v. Larche*, 363 U.S. 420, 438–39 (1960)).

The government argues that the temporary regulations were not required to comply with the APA because a more specific statute, IRC § 7805(e), governs the regulations and contemplates the creation of immediately effective temporary rules.  Section 7805(e) would be read into a nullity, it suggests, if the Treasury regulations must undergo notice and comment before promulgation.  The government asks, rhetorically, why would the Treasury Department ever issue temporary regulations if the same procedures required to issue final regulations must be complied with to issue temporary regulations?

A similar question was posed in *Coalition for Parity v. Sebelius*, 709 F.Supp.2d 10 (D.D.C. 2010).  There, the court dealt with a challenge to interim final regulations issued by the Department of Health and Human Services under the Mental Health Parity and Addiction Equity Act.  The Department argued that Congress must have intended to displace the APA's notice and comment requirements for interim final rules because otherwise, the grant of authority to grant

---

[1] Reported at 27 F.4th 1138 but not yet paginated.

interim final rules would be meaningless. It argued that there would be no point in promulgating interim final rules instead of final rules if the same procedural APA requirements must be met for both. The court rejected these arguments, stating, "the grant of interim final rulemaking authority is not susceptible to only one construction. The statute may be read to require that interim final rules be promulgated either with notice and comment or with 'good cause' to forego notice and comment." *Id*. at 19. Here, too, if there is good cause to issue temporary regulations without notice and comment, it may be done.

The government also argues that requiring temporary regulations to undergo notice and comment is at odds with the legislative history of § 7805, and that § 7805 takes precedence over the APA. Section 553 of the APA generally requires agency regulations to be subjected to notice and comment before they are promulgated. 5 U.S.C.A. § 553. If a challenged agency action creates a "legislative rule," full compliance with the APA's notice and comment processes is required. *Mission Group Kansas, Inc. v. Riley*, 146 F.3d 775, 781 (10th Cir. 1998). But a more specific statute will always take precedence over the more general statute when there is a conflict between the two. *See Redhouse v. Comm'r*, 728 F.2d 1249, 1253 (9th Cir. 1984); *Wing v. Comm'r* 81 T.C. 17, 30 (1983) (quoting *Bulova Watch Co. v. United States*, 365 U.S. 753, 758 (1961) (specific controls general without regard to priority of enactment)). Thus, when Congress sets forth specific procedures that "express[] its clear intent that APA notice and comment procedures need not be followed," an agency may lawfully depart from the normally obligatory procedures of the APA. *Methodist Hosp. of Sacramento v. Shalala*, 38 F.3d 1225, 1237 (D.C. Cir. 1994). When the statutory provisions authorizing certain rulemaking do not mention notice and comment or any other aspect of the APA, courts consider "whether Congress has established procedures so clearly different from those required by the APA that it must have intended to

8

displace the norm. *Coal. for Parity,* 709 F. Supp. at 18 (citing *Asiana Airlines v. FAA*, 134 F.3d 393, 397 (D.C. Cir. 1998)).

Here, the parties do not dispute that the temporary regulations are legislative rules, and that, under normal circumstances, they would be subject to the APA's notice and comment requirements. Section 7805(e) says only that "any temporary regulation issued by the Secretary shall also be issued as a proposed regulation," and that "any temporary regulation shall expire within 3 years after the date of issuance of such regulation." 26 U.S.C. 7805(e)(1)–(2). Neither of these terms gives a clear indication that Congress intended that notice and comment procedures would not apply to those temporary regulations.

Nor does § 7805(e) establish procedures so clearly different than those required by the APA that Congress must have intended to displace the norm. The issuance of temporary regulations in the form of proposed regulations and the provision such regulations must expire within three years are not, by their nature, inconsistent with the notice and comment procedure.

B. **Whether the Treasury Department had Good Cause for Failing to Comply with Notice and Comment Procedures**

As indicated, one exception to the requirement that an agency promulgating legislative rules or regulations must engage in notice and comment procedures is if "the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. §553(b)(B). The Treasury Department listed four reasons in the temporary regulations as to why there was good cause not to comply with APA notice and comment procedures: (1) allowing for the time to undergo notice and comment would allow or even encourage taxpayers to engage in the very behavior that these regulations seek to prevent;

(2) taxpayers would not have had sufficient time to take account of the retroactive regulations in their initial filing of tax returns and would instead have to file amended tax returns to comply with the temporary regulations, increasing taxpayer compliance costs; (3) the temporary regulations will only be in place for a limited amount of time, and there will be full opportunity for interested parties to comment on the final regulations; and (4) the final regulations' retroactivity provision ensures that the international tax regime enacted by Congress in the Act, and its interaction with existing tax rules, will function correctly for all affected periods. Temporary Regulations, 84 Fed. Reg. at 28398.

1. <u>Reason 1: Taxpayer Behavior</u>

The government argues that "[a]bsent immediate action, imminent, significant, and irreversible harm to the public fisc would have occurred." ECF No. 33 at 19. It asserts that billions of dollars were at stake if these base-erosion transactions were permitted to continue. Subjecting the temporary regulations to notice and comment and a delayed effective date "could embolden some taxpayers to engage in aggressive tax planning to take advantage of the unintended."

LGI responds that the Treasury Department had eighteen months to comply with the notice and comment requirements. Even if the Treasury Department only discovered the taxpayer behavior that would make these regulations necessary in October of 2018, that still left them roughly seven months to complete notice and comment and issue the regulations. Moreover, if the government believed, as it asserts, that the regulations would be retroactive, there was no reason to fear that the transactions would escape proper taxation even if it took most of the eighteen-month period to get the regulations out.

10

I agree with the Treasury Department that there was reason to be concerned about taxpayer behavior that would undermine the new tax scheme created by the TCJA. But I agree with LGI that there appears to have been sufficient time to issue the temporary regulations after a notice and comment period. The notice and comment period would have notified LGI and other taxpayers of the Department's position on these transactions and that the temporary regulations would apply retroactively. This would have permitted comments on retroactivity as well as the rest of the substance of the proposed regulations. Moreover, it is clear in any event that the Department may issue regulations retroactively "to prevent abuse." I.R.C. § 7805(b)(3). Though it failed to raise abuse as a ground for retroactivity in issuing the temporary regulations, it now argues that abuse would have been a sufficient ground for retroactivity. If abuse were a viable theory for retroactivity, as the government asserts, the government's argument that it had to race to promulgate loses its force. Public policy could have been served by subjecting the temporary regulations to notice and comment and applying retroactivity under an abuse theory.

2. Reason 2: Amended Tax Returns

In the temporary regulations, the Treasury Department argued that because certain taxpayers would have their taxes due during the comment period, allowing a comment period would require those taxpayers to amend their filings once the regulations were issued. Temporary Regulations, 84 Fed. Reg. at 28406. The Treasury Department argues that the cost to these taxpayers is good cause to refrain from engaging in notice and comment. LGI argues that Treasury Department knew that taxpayers were engaging in transactions like the TGH transaction as early as October 2018, and that had they been diligent in submitting the temporary regulations to notice and comment, they would have been able to have the temporary regulations effective for the 2018 tax filing date in April 2019. It also argues that compliance costs, without

11

more, cannot constitute good cause, especially where the compliance costs were created by the agency's own delays.

There is some irony in the argument that bypassing notice and comment, which is designed to give those who will be affected by regulations the opportunity to have their comments heard, is necessary to spare those same taxpayers the costs of filing amended returns. The compliance costs are insignificant in comparison to the tens or hundreds of millions of dollars in tax savings potentially achievable due to what might be viewed as a temporary "loophole" in the law. If notice had been provided, these sophisticated taxpayers would have been on notice that, if they engaged in a transaction contrary to the proposed temporary regulations in the tax year at issue, they might face some compliance costs including penalties if the proposed regulations were ultimately promulgated. Potential inconvenience and cost to such taxpayers does not override the public's interest in having an opportunity to comment on proposed regulations, nor the public interest in taxing consistently with congressional intent when the TCJA was debated and enacted.

3. Reason 3: Opportunity to Comment on the Final Regulations

The Department suggests that "good cause is supported where a regulation is temporary, with public comment permitted and meaningfully considered before finalization of the temporary rule." Temporary Regulations, 84 Fed. Reg. at 28406. LGI argues that if post-promulgation notice and comment were sufficient for the good cause exception, notice and comment would never occur before promulgation. That may well be right.

The provision of post-promulgation notice and comment is not an argument that there is good cause for not providing pre-promulgation notice and comment. It is more an attempt to

12

justify a failure to provide pre-promulgation notice and comment, which should be evaluated on its own merit.

    4. <u>Reason 4: Statutory Deadline</u>

This argument is largely a recast of the previous arguments. The Treasury Department argues that to have retroactive effect under § 7805(b)(2), the regulations had to be issued within eighteen months of the enactment of the underlying statute, here the TCJA. Without that retroactive effect, there would be no way to ensure that "the international tax regime enacted by Congress in the Act, and its interaction with existing tax rules, functions correctly for all affected periods." Temporary Regulations, 84 Fed. Reg. at 28406. I do not disagree. But notice and comment requires thirty days. The regulations are complex, for sure, but the Department had the period between December 22, 2017, when the TCJA was passed, and June 22, 2019 to issue the regulations. Even if the Department only learned of transactions like the TGH transaction in October 2018, that left roughly seven months to complete notice and comment and receive retroactivity under § 7805(b)(2). A statutory deadline is "a factor to be considered, but the agency must still show the impracticability of affording notice and comment." *U.S. Steel Corp. v. U.S. E.P.A.*, 595 F.2d 207, 213 (5th Cir. 1979). If the deadline could not have been met if an opportunity for notice and comment had been given, and retroactivity would thereby have been lost, I would find that to be good cause. However, that has not been shown.

    C. **<u>Whether the Treasury Department's Failure to Comply with Notice and Comment Procedure was Harmless Error</u>**

The Treasury Department argues that even if it was required to engage in notice and comment procedures and there was no good cause to justify not doing so, the error was harmless because it complied with notice and comment requirements when it promulgated the final rules,

13

which are substantively similar.  That provided an opportunity to weigh in on the § 245A regulations.  Further, though the temporary regulations are still in effect for the period from enactment of the TCJA to the promulgation of the final regulations, corporations subject to § 245A were given the choice of whether to apply the temporary or final regulations to their 2018 tax returns.  LGI responds that post-promulgation notice and comment does not alleviate the harm because the final regulations, unlike the temporary regulations, were not retroactive, so it had no opportunity to comment on whether retroactivity was appropriate.

Harmless error is only applicable in review of agency action "when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached." *Braniff Airways v. CAB*, 379 F.2d 453, 466 (D.C. Cir. 1967).  Additionally, "permitting the submission of views after the effective date is no substitute for the right of interested persons to make their views known to the agency in time to influence the rule making process in a meaningful way." *U.S. Steel Corp.*, 595 F.2d at 214 (5th Cir. 1979) (quoting *City of New York v. Diamond*, 379 F. Supp. 503, 517 (S.D.N.Y. 1974)).

Here, the taxpayers' "choice" was between (1) the default application of the retroactive temporary regulations to their 2018 transactions, even though the retroactivity of those regulations was not subject to notice and comment or (2) the application of the final regulations to their 2018 transactions.  While the final regulations are not retroactive on their face, if a taxpayer were to choose their application to transactions in the 2018 tax year, that taxpayer would have, in effect, made the final regulations retroactive by choice.  Under both options, the regulations would apply retroactively to transactions made during the problematic period.  I do not find that the error was harmless.

**ORDER**

LGI's motion for summary judgment, ECF No. 32, is GRANTED IN PART and DENIED IN PART. It is denied to the extent that factual questions remain on LGI's compliance with the underlying tax laws in the TGH transactions.

DATED this 4th day of April, 2022.

BY THE COURT:

_____
R. Brooke Jackson
Senior United States District Judge