# EXHIBIT 2

# Ramirez, E. Carmen (TAX)

| | |
|---|---|
| **From:** | Ramirez, E. Carmen (TAX) |
| **Sent:** | Friday, November 4, 2022 10:00 AM |
| **To:** | Wacker, Nathan P |
| **Cc:** | Sawyer, Thomas J. (TAX); Hoenig, Isaac M. (TAX); Madan, Raj |
| **Subject:** | RE: LGI- quick ESI question |

Nathan,

Thanks for your time yesterday afternoon.

On the existing discovery requests:

-We understand the current pool has about 2,000 docs that were previously collected but not produced.  They were likely reviewed or screened at some level in the past, but at present have not all been reviewed for purposes of our September 16 RFPs.  Your folks are reviewing now, and expect to make a material production by 11/9, with substantial completion and a privilege log (if applicable) by 11/15.  You expect the productions to be under 500 documents, but made no commitment on the specific number because you are not done with the review.

Deloitte overseas documents:

-We appreciate your prior agreement to facilitate getting the relevant documents from Deloitte's overseas offices without formal international processes.  We expressed our concern that we have not heard any specifics from you, as we also discussed on Monday.  Since the window to collect, review, and produce documents in time to take depositions concerning them before discovery closes is closing fast, we asked that you provide a specific plan by 11/9.  If the answer is you cannot do so, we need to know that by 11/9 too.

LGI document collection:

We understand that your client managed the document collection and screening process (i.e., identifying custodians, locations to search, search terms etc.), and that you therefore will need to refer questions to them.

We appreciate you providing us with the custodians and search terms your client used.  Until you sent the terms (on 10/27), I had not appreciated that was your client's methodology.

I won't restate all our concerns, but here are follow-up questions:

1) Tina Zheng—We had suggested Ms. Zheng should be a custodian. Your understanding was that Ms. Zheng's materials did not need to be collected because she worked on specific projects at Margrit Archer's direction, so all or most of her materials would be picked up with the Archer collection.  After speaking, we ran some test searches in the documents we have from other custodians, and it seems Ms. Zheng is on at least some e-mails w/ out Ms. Archer.  Of course, we won't have the true picture of how often that happened, since we are w/ out Ms. Zheng's documents (so are looking at documents collected from different custodians, not Ms. Archer, that include Ms. Zheng).  We are considering further.

2) Marcel van den Berg – we were a little confused whether his documents were based in the UK or US, since he was listed with the US custodians.  You believe the repository is the same for him, wherever it is located, and you believe it was collected.

1

3) Language: you were not positive (off the cuff) which languages the search terms were run for the overseas custodians, but believe local language search terms were used, and that the language was probably not Dutch. We do see documents in the database that appear to have Dutch (though not a huge %). Either way, we would like to confirm which languages were used for each custodian, specifically. (It appears some docs have more than one language.) We would like to see the search terms as run, i.e., in whatever language or languages were used for each custodian.

4) Search terms: respectfully, we believe many of the terms your client chose were quite limiting. We are concerned that, as a result, the overall pool of documents from which you reviewed and produced may have been too limited. For example, we think it unlikely that non-attorney employees would be using legal doctrines like "economic substance" or "sham" in communications.

We therefore ask that you ask your client to run the following terms against the existing custodians, and let us know the counts for each search. (Our experience is that it should be reasonably easy to run the terms separately and together, so we can see how many unique document hits there are, i.e., so we avoid counting a document with hits for two separate terms twice.)

Once we have the counts, we may also modify these if they seem problematic for other reasons.

As for technical matters, I think we agree that actually running the searches will not take long, but we understand you are not doing it at you firm and have to reach out to folks at your client, which may take a few days. We noted that if you can tell us the software your client is running, our tech folks may be able to streamline the syntax or otherwise save time. As noted, the exact format of the searches will depend on what system your client uses. We can make our folks available to talk to yours, if that helps.

Note: these are not intended to be case-sensitive. Please discuss if that is an issue.

We assume it will easiest to run the terms against the US and UK-based custodians, since I assume that will be in English. If it takes longer to run the various foreign language terms we would appreciate getting the US and UK hit counts as soon as possible.

1. Your client ran code sections 245A, 351, and 964. Please add:

   - 951
   - 951A
   - 1248
   - GILTI
   - Subpart F, and also sub-part F and sub F. Depending on the database you are using you may need to run it as: sub* F or sub* /5 F. Please use whatever syntax your database requires to hit all variants. We can discuss with your tech folks if needed.)
   - 301.7701* (This is the reg, not the code section. The intent of the * is to pick up the various subparts, e.g., 301.7701-1, -2, (a), etc. It may be a symbol other than * in your system.

2. Your client did not include "dividend." Please run:
   - Dividend
   - DRD
   - Capital gain* and cap gain* (Again, I don't know what syntax your database requires to capture variants, but we want to pick up "capital gains" and "capital gain" and "cap gain" and "cap gains" and similar.)

3. Your client ran "NQPS." Please run:
   - preferred stock

2

- Non-qual* /10 stock  and nonqual* /10 (Again, we defer to your tech people on syntax, but the idea is to pick up all reasonable variations on non-qualified preferred stock)

4. Your client ran "LGI Slovakia Holdings Inc" and "LGI Slovakia."  Please run:

    - Slovakia*  (or whatever syntax needed to get Solvak, Slovakian etc.)

5. Your client ran "NV Conversion." (We just don't think that will pick up all discussions about the conversion.)  Please run:

    - NV

    - NV and BVBA (meaning documents that have both NV and BVBA anywhere in them, not just next to each other.  We offer this in case NV picks up an unworkable number because it hits references to Nevada, for example.  For now please run both NV alone and NV with BVBA in the same document, and we can compare hit counts.)

6. Your client ran "'Boot stock' ~15" Please run:
    - Boot (no modifiers.  If this yields an unworkable number we can discuss.)

7. Your client did not run earnings and profits.  Please add:
    - E&P  (The & symbol may require updating the database index, please discuss if you need technical assistance.)

    - Earnings within 15 words of profits (Again, the syntax may vary depending on your database)

8. Your client ran "Liberty Global Broadband I Limited" and "Liberty Global Broadband II Limited."  Please run:
    - "Broadband I" and "Broadband II"

9. Your client ran ""Telenet Financing USD LLC."  Please run:

    - Telenet Fin* (Again, whatever syntax needed to get finance, fin., financing, and similar variations.)

Thanks for your assistance,

E. Carmen Ramirez
Trial Attorney
United States Department of Justice, Tax Division
202-598-7815 (mobile)
202-616-2885 (office)
202-307-0054 (fax)

---

**From:** Ramirez, E. Carmen (TAX)
**Sent:** Monday, October 31, 2022 4:55 PM
**To:** Wacker, Nathan P <Nathan.Wacker@skadden.com>; Sawyer, Thomas J. (TAX) <Thomas.J.Sawyer@usdoj.gov>
**Subject:** LGI- quick ESI question

Nathan and Raj-

3

Thanks for speaking today.  A very quick ESI follow-up, since it sounds like you are talking w/ your ESI folks.  At least one e-mail we have seen appears to reference shared drives or locations where relevant documents were stored, not just e-mails.  Can you please specifically confirm the drives/locations listed here were collected?  Screen shot below:

> The tax basis for Telenet fixed assets and intangibles has been up[dated]
> with this!
>
> Gain Calc v2 saved here: T:\Tax\Tax\2019\Projects\Project Soy\G
> Tax Basis file saved here: X:\US\Tax\Tax\Permanent\Stock Basis
>
> Margit/Tina - For purposes of the provision estimate, I want to sa[ve]
> the provision calc and any of the source documents that impact th[e]
> \Projects\Quarterly Provision Calcs (2018)\Q4 2018\Additional S[u]
> Provision Estimate. I've already save down the tax basis in fixed a[nd]
> the balance sheet version you ended up using and all that jazz?
>
> Thanks,
> Marianne

Thanks, and happy Halloween,


E. Carmen Ramirez
Trial Attorney
United States Department of Justice, Tax Division
202-598-7815 (mobile)
202-616-2885 (office)
202-307-0054 (fax)

4