```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF COLORADO

 3
      Civil Action No. 20-cv-03501-RBJ
 4

 5     LIBERTY GLOBAL, INC.,

 6           Plaintiff,

 7           vs.

 8     UNITED STATES OF AMERICA,

 9           Defendant.

10     ------------------------------------------------------------

11                        REPORTER'S TRANSCRIPT
             TELEPHONIC DISCOVERY AND STATUS CONFERENCE
12
       ------------------------------------------------------------
13
               Proceedings before the HONORABLE R. BROOKE JACKSON,
14     Judge, United States District Court for the District of
       Colorado, commencing at 3:30 p.m. on the 23rd day of
15     February, 2023, in Courtroom A902, Alfred A. Arraj United
       States Courthouse, Denver, Colorado.
16
                             APPEARANCES
17
       For the Plaintiff:
18
       RAJIV MADAN and NATHAN WACKER, SKADDEN, ARPS, SLATE, MEAGHER &
19     FLOM LLP, 1440 New York Avenue, N.W., Washington, DC 20005

20     GREGORY S. TAMKIN, DORSEY & WHITNEY LLP, 1400 Wewatta Street,
       Suite 400, Denver, CO 80202-5549
21
       For the Defendant:
22
       THOMAS J. SAWYER, E. CARMEN RAMIREZ, and ISAAC HOENIG, Trial
23     Attorneys, U.S. DEPARTMENT OF JUSTICE, TAX DIVISION, P.O. Box
       683, Ben Franklin Station,  Washington, D.C. 20044
24
               JULIE H. THOMAS, RMR, CRR, Official Court Reporter,
25      901 19th Street, Room A256, Denver, CO 80294, (303)335-2111

              Proceedings reported by mechanical stenography;
                  transcription produced via computer.
```

```
 1          (Proceedings commenced 3:30 p.m.,
 2       February 23, 2023.)
 3          THE COURT:  All right.  This is Judge Jackson,
 4   calling 20-cv-3501, Liberty Global versus United States.  This
 5   is a telephonic status conference slash discovery dispute
 6   conference.
 7          Who is appearing for the plaintiff, Liberty Global?
 8          MR. MADAN:  Your Honor, this is Raj Madan from
 9   Skadden Arps, and with me here is Nathan Wacker.
10          MR. TAMKIN:  Good afternoon, Your Honor.  This is
11   Greg Tamkin of Dorsey and Whitney, also on behalf of Liberty
12   Global.  I think Mr. Madan is going to handle the discussion
13   today.
14          THE COURT:  How about for the United States?
15          MR. SAWYER:  Good afternoon, Your Honor.  Thomas
16   Sawyer, and with me is Carmen Ramirez and Isaac Hoenig.
17          THE COURT:  All right.  So the Government's position,
18   which most recently was described in a document that you filed
19   last night, but has been described in other documents, such as
20   a statement that you filed before, seems to me to be somewhat
21   wishy washy.  I don't really know if you want the discovery,
22   if you don't want the discovery.  I don't know if you want
23   some additional time to get the discovery.  At times you say
24   you want the discovery.  At other times you say, well, but if
25   we lose the first case, then we don't need it, or if we can
```

1    key up summary judgment based on stipulated facts, then maybe

2    we should do that.

3            So, Mr. Sawyer, I will tell you that, generally

4    speaking, I would be inclined to support your position.  After

5    all, Liberty Global has benefited so far, according to the

6    decision that I made in the first case, to the tune of a

7    hundred-million-plus tax benefit because, with the help of

8    their lawyers, they were able to steer through what to my mind

9    was a loophole.  But, regardless of that, they've got ample

10   resources, money, lawyers, whatever, and I'm not going to be

11   too interested in hearing them whine about the burdens of

12   discovery.

13           On the other hand, like I say, your position is so

14   hard for me to get my hands around, I don't really know what

15   it is that you truly want.  So maybe you can tell me.

16           MR. SAWYER:  Yes, Your Honor, and hopefully I can

17   clarify our position.

18           So we served document requests on Liberty Global at

19   the beginning of this case, a relatively broad one asking for,

20   you know, essentially, you know, all planning and execution

21   documents relating to the transactions at issue.  On reviewing

22   the documents they provided, you know, there seemed to be

23   missing categories.  So we discussed with LGI, you know, is

24   this truly a complete production.  And we followed up last

25   summer with another request for production that still is going

1   to, you know, the basic Project Soy transaction documents but

2   clarifies, you know, the categories a little more.  And these

3   are the basic types of documents that we should have been able

4   to get at the beginning of the case, and here we are --

5            THE COURT:  So --

6            MR. SAWYER:  -- quite a long way into -- sorry.

7            THE COURT:  So far you haven't answered my question.

8   All you have told me so far is what I already knew.

9            MR. SAWYER:  So while we don't have those documents,

10  we need those documents, we believe, to address the proposed

11  motion that Liberty Global wants to file.

12           If I could make maybe a point about, you know, last

13  summer Liberty Global requested, you know, leave to file a

14  summary judgment motion that would not have been dispositive,

15  in our view, and that we needed more discovery.  Since then

16  they have made a number of admissions that will allow us to

17  cross-move for summary judgment and potentially make this a

18  completely dispositive motion.  However, we still believe we

19  are entitled to those core documents that should have been

20  provided.

21           And if the -- if I can describe briefly, you know,

22  the, you know -- Section 7701 of the code is the codified

23  economic substance doctrine, and --

24           THE COURT:  I get that.  I understand that they've

25  stipulated to the applicability of the two requirements for

1    the economic substance to apply.

2         MR. SAWYER:  Right, and so the --

3         THE COURT:  But they disagree that the statute

4    applies at all, but they agree that if it applies, the two

5    elements have been satisfied.  In other words, they are not

6    trying to pretend that this transaction was for some other

7    business benefit.  It was nothing more than a tax deal.  And

8    they have agreed to that.

9         I understand all of that.  I still don't know what

10   you want.

11        MR. SAWYER:  Well, I -- again, it would be any

12   documents that Telenet has that describes the business

13   purposes for these restructuring transactions.

14        THE COURT:  Why would you need that if they

15   stipulated that there wasn't any business purpose other than

16   tax evasion?

17        MR. SAWYER:  Because the standard for determining

18   relevance and, you know, a description and the legislative

19   history, the joint committee report and the House report, you

20   know, it basically says, you know, realization of tax benefits

21   in a transaction must be consistent with congressional purpose

22   or plan that the tax -- that Congress designed to effectuate

23   by, you know, by the statute.  And then it goes on:  The

24   provision is not intended to alter the treatment of certain

25   basic business transactions that, under long-standing judicial

1    administrative practice, are respected merely because a choice

2    between meaningful economic alternatives is largely or

3    entirely based on tax advantages.

4            And in the joint committee and House reports they

5    cite a number of cases, and I have quotes from many of them,

6    but I'll just start with -- you know, the first one is *John*

7    *Kelly versus Commissioner*, it's a 1946 Supreme Court case, and

8    it says, you know -- and it's a debt versus equity question,

9    but it says such a determination should be based on all the

10   facts and circumstances.  So there are a number of cases that

11   say this determination -- and, again, this is in the

12   legislative history, so we would say these are the cases

13   Congress was referring to on the decision of when is a

14   document relevant.  And case after case say it's based on the

15   facts and circumstances of the transaction.

16           So there's these core documents that we have asked

17   for that have not been provided that would go to these facts

18   and circumstances.  And I'd say once we have those documents,

19   you know, then the case may be ready for summary judgment, but

20   we would like to, you know, see those core documents to see

21   what, you know, the business purposes are.

22           You know, another case says the transaction was

23   designed to engineer an artificial tax loss, which we believe

24   this transaction was.

25           THE COURT:  Yes, it was.  There's no question about

1   it.  And they virtually stipulated to it.  They are not trying

2   to hide that, are they?  They are saying:  Hey, look, guys,

3   there wasn't any other business purpose for this.  There

4   wasn't any other benefit.  We read the tax bill, and we're

5   smart attorneys, and we figured out that there was a way that

6   we could use this new legislation to avoid a hundred million

7   dollars worth of tax.  That was our purpose.  That was our

8   only purpose.  We're taking advantage of a loophole in the tax

9   bill.

10           Now, if they've stipulated to that, which I think

11  they have, then why are you needing additional documents to

12  prove that?

13           MR. SAWYER:  Well, they have not stipulated quite to

14  that, Your Honor.  They have stipulated that there is a, uh --

15  the substantial purpose was tax relief -- was tax reasons.

16  They have said that there are not business reasons for that.

17  We have not seen anything in the documents that they provided

18  us that has a business reason for it.

19           And perhaps you can ask Mr. Madan if he will

20  stipulate that there was no business purposes.  If he will,

21  then I think we are probably ready to go to summary judgment.

22           THE COURT:  Well, I thought he had already done that,

23  but, Mr. Madan, I assume you are willing to stipulate to that.

24  Right?

25           MR. MADAN:  Well, Your Honor, let me just say this,

1   that we have 66 admissions, requests for admissions, from the

2   IRS.

3          THE COURT:  That wasn't my question, Mr. Madan.

4          MR. MADAN:  Well, Your Honor, I'm, like, telling you

5   that, from a technical perspective, every element of the

6   statute we have agreed to.  And when it comes to the question

7   you are posing, at a big-picture level the answer is yes.  I

8   just want to make sure that we answer it in a technical way in

9   writing, and they have done exactly that in two ways,

10   generally, the way we are just talking about it, and the

11   individual steps they've asked us.  And we have addressed all

12   of them.  So, like, they're -- if they ask another question,

13   we will address that too, but there has been no gap in what

14   they have asked us for requests for admissions, in the 66 that

15   they have asked us for, and what we have admitted to.  They

16   haven't come back to us and said, By the way, we have this

17   additional thing we want you to stipulate to.

18          So we thought we were done and dusted on every

19   potential disputed issue of material fact.

20          MR. SAWYER:  Your Honor, may I read one of the --

21          THE COURT:  Well, just a minute.  Just a minute.

22          That was just a big New York firm's weasel words that

23   didn't answer this Colorado federal judge's question.  And if

24   that's the answer, then I'm going to authorize the discovery,

25   against my better judgment.

1          Now, I've got this -- 7701 right in front of me, and

2     it says:  Application of the doctrine.  In the case of any

3     transaction to which the economic substance doctrine is

4     relevant -- that's the first thing, any transaction to which

5     it is relevant -- then such transaction shall be treated as

6     having economic substance only if (A) the transaction changes

7     in a meaningful way, apart from federal income tax effects,

8     the taxpayer's economic position.  In other words, if there is

9     some meaningful way in which the transaction changes the

10    taxpayer's economic position other than the tax effects.  And

11    (B) the taxpayer had a substantial purpose for entering into

12    the transaction apart from federal income tax effects.

13         Now, the question is very simple.  Does Liberty

14    Global stipulate that, A, the transaction did not change in

15    any meaningful way, apart from federal income tax effects, the

16    taxpayer's economic position?  And will Liberty Global

17    stipulate, B, that it had a substantial purpose, apart from

18    federal income tax effects -- that it did not have a

19    substantial purpose, apart from federal income tax effects,

20    when entering into the transaction?  Or put another way, even

21    simpler, in plain English, the reason and the only reason that

22    Liberty Global did this deal was to save taxes and nothing

23    less.

24         Now, will you stipulate to that?  Yes or no?

25         MR. MADAN:  Your Honor, and excuse me for giving you

1    a lengthier answer.  First of all, I think we already have

2    stipulated to that.  I would just want to confer with my

3    client to make a hundred percent sure that I'm not missing

4    something and that they are in agreement.  But two things:

5    One, I think we have already stipulated to exactly those two

6    points; and, number two, as you said at the outset, we are not

7    relying at all on compliance with this particular provision,

8    either step one or two.  We're saying we are not in economic

9    substance.

10           So I think I can stipulate to it.  I would like to

11   confer with my client and confer that, but I think, A, we have

12   already done it, and, B, if the Court wants me to make that

13   representation I would just ask that perhaps even tomorrow we

14   can get back on the phone and I can agree to that.

15           THE COURT:  Why do you have to talk to your client if

16   you have already done it?

17           MR. MADAN:  Well, I just want to make sure that I'm

18   not missing something here by making this concession on the

19   record in a way that -- that is different from what I said.

20           THE COURT:  I don't think you miss anything,

21   Mr. Madan.  I don't think you miss a single thing.  In fact,

22   as I understand it, not only did you do a bang-up job for

23   Liberty Global, but you have even gone public with your

24   success in creating this tax deal.  No, you haven't missed

25   anything, Mr. Madan.

1    MR. MADAN:  Your Honor, I had nothing to do with the

2    creation of the tax deal.  I, first of all, don't do that kind

3    of work.  I just defend the transactions.  So I can't take

4    credit for that.

5    THE COURT:  All right.  So now back to you,

6    Mr. Sawyer.  He has answered, as far as I am concerned, that

7    it is true the transaction did not change in a meaningful way

8    the taxpayer's economic position and the taxpayer did not have

9    a substantial purpose for entering into the transaction apart

10   from federal income tax effects.  He thinks he's already

11   stipulated to that.  He's willing to stipulate to that.  He's

12   acting like a lawyer in saying, Oh, I've got to talk to my

13   client one more time to make sure I'm not missing something.

14   He's not missing something.  Let's assume that he's stipulated

15   to that.  I believe he has.  Furthermore, I am absolutely

16   convinced, even though I'm looking at this from outside and

17   without any tax expertise, that that's exactly what this deal

18   was about.

19        Now, where does that leave you with all your

20   discovery?

21        MR. SAWYER:  The primary question for relevance -- I

22   guess for a two-part question we think the Court has to

23   answer.  One, is this consistent with the congressional

24   purpose?  And when you look at the legislative history, they

25   say, you know, the doctrine is not intended to, you know, to

1    apply to basic business transactions that have long been

2    recognized as, you know, as -- as respected by the IRS, have

3    long been respected by the IRS.  And here our view is this is

4    anything but a basic business transaction.  We've seen nothing

5    in the --

6              THE COURT:  You keep coming back to the same thing.

7    He's agreed to that.

8              MR. SAWYER:  He hasn't quite agreed to that.  And

9    I'll just read one of the admissions we asked them.

10             Please admit Step 1 -- I'm on number 25, Mr. Madan --

11   Step 1 of the transaction had no non-tax economic or

12   commercial effect.

13             LGI's response:  Denied.  Step 1 of the transaction

14   had non-tax economic and commercial consequences, including

15   consequences under Belgian corporate law.

16             So we have asked for any documents that Liberty

17   Global has, that Telenet has, that describe their review or

18   has this had any, you know, non-tax consequences or effects.

19   And, you know, we think they have collected those documents.

20   They have told us they were going to produce them by

21   January 6, and we are still waiting for them.  And, again,

22   these are basic documents we should have been provided a long

23   time ago.  And I think once we have these basic documents,

24   we're ready for summary judgment as long as, you know -- I

25   mean, another what you would say is our wishy-washy response

1    is that if the Court were to look at the parties'

2    cross-motions and decide that there were material facts that

3    needed a trial, then we, you know, again, we would request

4    that -- you know, we've been denied depositions and documents,

5    and we would -- you know, in any event, we need to preserve

6    our right if the Court finds there is a material fact.

7              THE COURT:  Okay.  Look, the answer to the request

8    for admissions strikes me as the exact kind of thing that

9    lawyers do when they answer requests for admissions because

10   they're too darn afraid of their own shadow to just admit

11   things.  But unless I'm just not hearing something here,

12   Mr. Madan has agreed to what you want, regardless of the

13   requests for admission.  Basically he's agreed that the

14   request for admission denial is no longer valid.  He's agreed

15   with what you want.  And you keep saying, Well, yeah, but, you

16   know, what if the Court finds that there's a fact dispute and

17   then we're going to need all this discovery?  I almost hear

18   you say, Mr. Sawyer -- I don't want to sound facetious here --

19   as if you just can't believe what you are hearing from

20   Mr. Madan, so you want to go ahead and get this discovery and

21   prove something with the documents that he's already

22   stipulated to and that maybe, as a result of your discovery,

23   you will come up with a business justification that you didn't

24   know about in Belgium or somewhere.  I guess I don't get it.

25              I will accept the premise, without knowing for sure,

1    I'll just assume, without deciding, that you've requested

2    discovery that he should have -- they should have responded to

3    and they haven't.  I accept that.  There's outstanding

4    discovery they haven't responded to.  They don't want to.  I

5    don't know why.  Maybe it's just too much of a hassle.  Maybe

6    they don't want to have the Government get their nose under

7    the camel's -- the camel's nose under the tent and see what's

8    in those documents because it might set off other sirens.  I

9    don't know what their motive is.  I'll just assume they

10   haven't responded to discovery that they should have, but that

11   isn't the question.

12          The question is:  Now that they've stipulated that

13   this was nothing but a tax deal invented by lawyers,

14   perpetrated by lawyers, they did it, and so far they've gotten

15   away with it for a purely procedural glitch by the

16   Government -- not because I like the decision I wrote.  I

17   don't.  I pay my taxes, and, by golly, Liberty Global ought to

18   pay their taxes, like everybody else.  I didn't like that

19   decision at all, but the Government didn't do the simplest

20   thing that it could and should have done, and that was give

21   notice and opportunity for comment.  And that offended me, and

22   that was contrary to the APA, and it forced me to issue a

23   decision that I didn't like, but I did, and you lost.

24          And now I don't know what the summary judgment is

25   going to be all about.  I don't know what the deal is.  I'm

1   getting the impression that what your -- your position is is

2   that summary judgment shouldn't be granted not because there's

3   a fact dispute -- and if there's a genuine fact dispute, I

4   will deny the summary judgment without even getting to page 3,

5   but I think your position is it's not that there shouldn't be

6   summary judgment.  It is that summary judgment ought to be

7   granted for the Government because this isn't what Congress

8   had in mind.  There was no economic substance to this deal.

9   This isn't what Congress wanted, and we should win.  Right?

10           MR. SAWYER:  Your Honor, you know, we certainly are

11   prepared to go forward with summary judgment and, you know, as

12   long as we're -- you know, if you do find that there's a

13   material fact, it seems like you would be inclined to direct

14   Liberty Global to, you know, produce the documents and the

15   witnesses that we've asked for.  I mean, there are -- again,

16   to get back to the documents that they said would be produced

17   by January 6th, our understanding from, you know -- and we do

18   have a good relationship with our colleagues at Skadden -- our

19   understanding is that all the lawyers have reviewed the

20   documents, they're up with Skadden's, you know, production,

21   you know, technical people, and all they need to do is push a

22   button to send the documents to us.  So, you know, if you do

23   go forward with summary judgment briefing, which we are happy

24   to discuss and -- and take that route, you know, at least

25   direct them to push that button and send us the, you know,

1   whatever hundreds of documents that they have teed up ready to

2   transmit to us that they haven't pushed that button yet, for

3   reasons I don't understand.

4        THE COURT:  Well, let me ask you, Mr. Sawyer, is

5   there or is there not, in your opinion, a fact dispute that is

6   material?

7        MR. SAWYER:  I don't know of one, but I can't say

8   that there isn't one.  You know, it's sort of a -- we are not

9   entirely sure what, you know, what their relevance argument

10  is.  If they're getting into facts and circumstances of the

11  transaction to show that it's a basic business transaction,

12  then there is a dispute.  But if their, you know, if their

13  argument is truly a, you know, a legal argument and not a

14  factual argument, and we are permitted to use the discovery

15  we've done so far to show why we think the facts and

16  circumstances are that this was anything but a basic business

17  transaction, you know, then I think there's a pretty good

18  chance the Court can resolve this on summary judgment.

19       THE COURT:  Well, do you understand now why judges

20  tear their hair out?  I mean, you're so worried that they are

21  going to try to sneak in that this was a basic business

22  transaction, you're almost paranoid about it, even though they

23  have stipulated in front of a federal judge on the record and

24  apparently have already agreed before, he thinks, that there's

25  no business purpose at all.  The business purpose was simply

1    to save tax dollars, nothing more.  That was it.  They came up

2    with something clever.  They were very clever.  They figured

3    out a way to use this hocus-pocus of transferring money here

4    and there among their global family of companies and take

5    advantage of the Trump administration's tax bill to save their

6    stockholders a lot of money.  Well, in a sense you have to say

7    good for them.  They did what good lawyers do.  But, no,

8    you're not convinced.  You think Mr. Madan has got something

9    up his sleeve.

10          MR. SAWYER:  Well, you did ask him a pretty

11   straightforward question that he wasn't able to say yes to.

12   And I would wish that he could say yes to that and we could

13   move on to our summary judgment.

14          THE COURT:  Okay.  How about if we do this?  I'll

15   give Mr. Madan until next Monday to file a very specific

16   admission, no legal words, nothing, a very specific admission

17   that the transaction did not change the taxpayer's economic

18   position in any meaningful way apart from tax and it had no

19   substantial purpose for -- other than tax.  In other words,

20   very specific, very direct, very non-weasely stipulation.  If

21   he does that, then you are telling me you are happy and let's

22   go ahead and see about summary judgment.  If he doesn't do

23   that, if there's even one weasely word, then the Court is

24   going to order that he push that supposed button and that he

25   make that discovery available to you and he make his people

1    available for depositions and he comply fully with Rule 26 and

2    his obligations.  How's that?

3        MR. SAWYER:  Well, again, Your Honor, he did do an

4    admission that parroted the statute that you just quoted, but

5    that gets to those two elements of 7701.  The relevance

6    question is -- gets to the question whether it's a basic

7    business transaction, and that's why we say -- and the cases

8    are, you know, the facts and circumstances surrounding, you

9    know, the transaction, and so that's why we have asked for the

10   documents related to any of those purposes and, again, which

11   we think they have ready to send to us, and we don't have,

12   but, you know -- so that's what we were --

13        THE COURT:  What do you want him to stipulate to?  I

14   told him very specifically what he had to stipulate to, but

15   now you are saying, No, I want him to stipulate that it wasn't

16   a basic business transaction.  What does that mean?

17        MR. SAWYER:  That's in the legislative history, and

18   that's where relevance goes to is that the doctrine is not

19   intended to apply to basic business transactions that the IRS

20   has long and the courts have long recognized as being outside

21   of the economic substance doctrine.  And so that's what we're

22   asking about is is this -- you know, is this such a basic

23   business transaction.  He has stipulated to those two

24   elements, but this is -- you know, there's a different twist.

25   You know, this is that initial question of whether it's

1   relevant, and that's why we say we need the facts and

2   circumstances about the transaction so that Your Honor can

3   decide that the -- you know, whether or not that transaction

4   is subject to the economic substance doctrine.

5          THE COURT:  Oh.  Now I understand.  So he stipulates

6   to the (A) and to the (B), but he's going to argue that the

7   economic substance doctrine is not relevant here because this

8   was a basic business transaction.  That's what you think he's

9   going to do.

10          MR. SAWYER:  Yes.

11          THE COURT:  Mr. Madan, is that what you are going to

12   do?

13          MR. MADAN:  Well, Your Honor, I don't think that's

14   capturing -- like I said, I've said to Mr. Sawyer, at least my

15   colleagues have, and I said to you, our point is economic

16   substance, that doctrine, that statute, the common law, all of

17   it, applies to certain types of transactions.  It does not

18   apply to this transaction.  That's our whole point.  We are

19   not arguing that we complied with this rule in the sense that

20   we have a valid business purpose or that it changed in a

21   meaningful way Liberty's economic circumstances.  That's the

22   whole point.  We are not trying to debate our compliance with

23   those two key elements.  We are saying we are not in the

24   statute to begin with.

25          THE COURT:  Why?

1          MR. MADAN:  If there's -- internal restructuring

2    transactions solely within a company are not governed by

3    economic substance.  Every transaction inside of a company can

4    be motivated by tax.  You are not dealing with third parties.

5    You can transact with yourself for purposes of generating a

6    certain tax result.  That's been happening for decades.  You

7    move legal entities around.  You reorganize your company

8    structure for tax reasons.  The whole point of that is that

9    was -- those transactions were done outside of economic

10   substance.  And, in fact, that's recognized in the very

11   legislative history that Mr. Sawyer is contemplating.  But

12   that's a legal question.  You can decide that question,

13   whether we are in economic substance or not.  That has nothing

14   to do with the compliance with the two provisions.  And

15   there's no fact question there.  It's just a legal question.

16   Does economic substance generally apply to internal

17   restructurings or not?  That's it.

18          THE COURT:  Okay.  Having heard that, then, I change

19   my mind and order that the Government [sic] produce the

20   discovery that it's obligated to produce and that it

21   apparently -- I mean, not defendant, the plaintiff -- and that

22   it apparently already agreed to produce in January and didn't

23   produce.  You are ordered to produce the documents that they

24   have requested.  You are ordered to make available to them the

25   deponents that they have requested.  We'll let them get that

1    information, and then we'll tee it up, if appropriate, for

2    summary judgment.  I think the whole discussion we have had

3    was clarified by your last speech.  So that's the Court's

4    order.

5            Is there anything else this afternoon, gentlemen?

6            MR. MADAN:  Your Honor, this is Raj Madan again.

7    Like, I am totally confused.  Nothing I said created an issue

8    of fact or did anything to undermine the first half an hour of

9    our conversation.  We were in exactly the same place.  We have

10    been saying the same thing the whole time, which is we don't

11    have an issue of fact.

12            And as far as the discovery is concerned, we have

13    produced 2,000 documents.  The documents that are -- primarily

14    have not been produced are in Belgium and are in a foreign

15    language that we -- that we don't want to go through the

16    burden of translating, because they are either in Dutch, I

17    think, or Flemish.  There's just nothing relevant to the two

18    questions in the statute.

19            THE COURT:  Well, I don't know that, and Mr. Sawyer

20    doesn't know that.  And your complaint about burden falls on

21    entirely deaf ears given the amount of money that's involved

22    here and that you are going to benefit from if you win.

23            The Court's order stands.  Produce the documents.

24    And if they're properly requested, I don't care what language

25    they are in.  Produce -- and you already agreed to that,

1    according to Mr. Sawyer, and reneged on your agreement.

2    Produce the deponents that they want.  And then we will see

3    where we are.  That's the Court's order.

4            Is there anything else?

5            Hearing nothing, thank you, gentlemen.  You get back

6    to me when you've got your documents and you've got your

7    depositions, and then you tell me, Mr. Sawyer, if we've got a

8    fact dispute or not.  Okay?

9            MR. SAWYER:  Yes.  Your Honor, if I may ask a

10   question on timing, I'm not sure how quickly Mr. Madan is able

11   to produce these.  As I said in our status report, I just

12   finished my first week of a six-week criminal jury here in DC.

13   And I guess we're concerned about an April 14 discovery, when

14   we had expected these documents back in January that would

15   have facilitated the ongoing discovery.

16           THE COURT:  Well, you are not the only lawyer for the

17   Government.  I'm glad you are on jury duty.  I hope that will

18   be a very enlightening experience for you.  But you are not

19   the only lawyer for the Government.  You are not the only

20   lawyer on this case.

21           I expect the documents to be produced by the middle

22   of March.

23           Good day, gentlemen.

24           MR. MADAN:  Thank you, Your Honor.

25           MR. SAWYER:  Thank you, Your Honor.

1      (Proceedings concluded 4:08 p.m.,

2      February 23, 2023.)

3
                    REPORTER'S CERTIFICATE
4
           I, JULIE H. THOMAS, Official Court Reporter for the
5      United States District Court for the District of Colorado, a
       Registered Merit Reporter and Certified Realtime Reporter, do
6      hereby certify that I reported by machine shorthand the
       proceedings contained herein at the time and place
7      aforementioned and that the foregoing pages constitute a full,
       true and correct transcript.
8          Dated this 27th day of February, 2023.

9
                        /s/ Julie H. Thomas
10                     Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25